307 So.2d 835 (1975)
Richard MORTON and Alan Morton, As Co-Executors of the Estate of James Morton, Deceased, Appellants,
v.
Emil MORTON, Individually and As Trustee, et al., Appellees.
Lawrence MORTON et al., Appellants,
v.
Emil MORTON, Individually and As Trustee, et al., Appellees.
Nos. 73-784, 73-889.
District Court of Appeal of Florida, Third District.
February 4, 1975.
Rehearing Denied February 26, 1975.
*836 Frates, Floyd, Pearson, Stewart, Proenza & Richman, Lapidus & Hollander, Miami, for appellants.
Sibley, Giblin, Levenson & Ward, Miami Beach, for appellees.
Before HENDRY and NATHAN, JJ., and CHARLES CARROLL (Ret.), Associate Judge.
CHARLES CARROLL, Associate Judge.
This is an appeal from a summary declaratory judgment, determining the effect to be given to a provision of a contract, if and when a contingency not covered by the terms thereof should happen.[1]
The contract was entered into on December 22, 1959, between Emil Morton, as trustee, Lawrence Morton, James Morton, Richard Morton, Alan Morton, Janice Newman and Robert Newman, being the several owners of property on Miami Beach upon which they subsequently caused to be constructed and operated an apartment complex known as Morton Towers. The ownership *837 interest of Emil Morton as trustee was one-third. The other parties to the contract were owners of the other two-thirds in designated amounts. The provision of the contract out of which the present controversy arose was as follows:
"3. It is contemplated that at such time as the parties shall agree, plans will be prepared for the erection upon said property of two 14-story rental apartment buildings. Emil Morton hereby agrees to supervise the operation of the property prior to the commencement of the demolition of the existing buildings, the demolition of said buildings, the construction of contemplated new structures, and the operation of such structures, without compensation. In consideration thereof, it is hereby agreed that the profits from the operation and sale of the property shall be allocated as follows:
Emil Morton, as trustee, 46% Lawrence Morton, 7 1/2% James Morton, 6 1/2% Richard Morton, 6 1/2% Alan Morton, 6 1/2% Janice Newman, 13 1/2% Robert W. Newman, 13 1/2%"
Following that provision of the contract, sub-paragraph (a) defined the profits there referred to as being the excess, if any, of income over operating expenses of the completed buildings, interest and amortization of the mortgage indebtedness and taxes (other than federal income taxes), and then stated: "For the purpose of allocating profit the amortization shall be charged as follows: Emil Morton as trustee 40%, Lawrence Morton 8%, James Morton 7 1/3%, Richard Morton 7 1/3%, Alan Morton 7 1/3%, Janice Newman 15%, and Robert W. Newman 15%. That was followed by sub-paragraph (b) which, summarized, provided that in the event of sale if the amount received exceeded the expenses incident to the sale and the investment cost, including construction plus any losses after construction, such excess should be applied first to repay the parties for the amounts of their cost contributions based on their ownership percentages, and that the balance of the sale profit should be distributed to the owners in the percentages provided for in paragraph 3 (as quoted hereinabove). Subparagraph (b) further provided that if the sale proceeds should not exceed the "investment and losses, the deficiency shall be borne in the percentages set forth in sub-paragraph (a) above".
By the contract the parties were prohibited from selling or assigning their ownership interest, but it was provided that Emil Morton could assign any part of his interest in the profits which was above that to which his one-third ownership interest would have entitled him. Acting thereon Emil Morton assigned to Robert L. Turchin a part thereof amounting to 8% of the profits.
This action as originally filed on August 25, 1969, by Emil Morton as trustee against Lawrence Morton, Wheatland Hills Corporation, Janice Newman Rosenthal, Robert W. Newman and The First National Bank of Miami, alleged disunity as to the handling of financial matters relating to the operation, and sought a mandatory injunction to compel the defendant bank to honor certain checks signed by Emil Morton without the required countersignature of Lawrence Morton and a mandatory injunction to compel the latter to countersign future checks. Raised by defendants in that case were contentions of breach of contract by Emil Morton with regard to such services. Added as parties to the cause were Lottie Morton and Max Boderman, as trustees for David Morton, Peter Morton and Robert Morton (children of Emil Morton and Lottie Morton).
By stipulation of all interested parties a consent decree was entered on November 4, 1970 in that action, under which Emil Morton's supervisory services continued. Included therein was the holding that Emil Morton's authority to supervise the operation *838 of the premises could not be revoked by the other parties, but could be terminated by the court after hearing on application of a party, upon a showing of his nonfeasance or malfeasance in office, or for willful or culpable neglect of his duties, or in event he became "totally disabled rendering him incapable of performing his duties". Following that holding the consent decree stated as follows:
"The parties and the Court recognize that there is outstanding and unresolved by this decree the legal question of Emil Morton's right, if any, to continue to receive increased operational and/or sales profits of 46% instead of his ownership percentage of 33 1/3% in the event of either his removal from office as herein provided or his death prior to a sale of Morton Towers. Any party hereto may at any time apply to the Court for a determination of such unresolved issues after due notice and hearing".
Thereafter, on December 15, 1970, Emil Morton, individually and as trustee, joined by Robert L. Turchin, intervenor, filed a petition in the cause for declaratory judgment for determination of the above question. The defendants filed answers thereto. A motion for summary (declaratory) judgment determining said question was filed by Emil Morton individually and as trustee, Lottie Morton and Max Boderman as trustees and Robert L. Turchin, stating, as grounds, that "there is no genuine issue as to any material fact and that the plaintiff is entitled to a judgment as a matter of law".
In the evidentiary matter which was before the court on hearing on motion for summary judgment there was some conflicting evidence regarding the intent of the parties to the original contract as to whether, as contended for by the Emil Morton group, Emil Morton's right to receive the additional profits above that to which his one-third ownership interest would entitle him was intended to continue in effect after such time as he might no longer be supervising the operation, due to his removal or death, or, as contended for by the other group, that it was not the intent of the parties to the contract that Emil Morton should continue to receive such added interest in the profits of operation or sale if and after his supervisory services should be so terminated, or that his heirs should continue to receive the same after the end of his supervision of the operation, if caused by his death.
The trial court granted summary declaratory judgment holding it was the intention of the parties that the right of Emil Morton to receive the added percentage of profits over and above that attributable to his one-third ownership interest should continue in the event of and after his removal or death. From that judgment two appeals were taken, No. 73-784 by Richard Morton and Alan Morton as executors of the estate of James Morton, and No. 73-889 by Lawrence Morton and Irma Morton, Richard Morton and Alan Morton.
The contentions of the appellants in appeal No. 73-784 are that the court erred (1) in holding there were no contested issues of fact, (2) in finding there was no ambiguity in the contract and (3) in holding that the right of Emil Morton to receive the additional 12 2/3 of the profits (above the percentage of profits he was entitled to receive based on his ownership interest) was vested and would continue after his death. The appellants in appeal No. 73-889 present the last-mentioned contention, and the further contention that since the contract did not create an agency coupled with an interest the intent of the parties as to the matter in question involved determination of issues which could not be resolved on motion for summary judgment, in view of the conflicting evidence bearing thereon.
We hold to be correct the contention of the appellants that the right of Emil Morton to receive 12 2/3% of the profits above that to which he was entitled by reason of his one-third ownership *839 interest, in consideration of his supervisory services, did not create a right thereto in the form of an agency coupled with an interest. In providing for such commissions or compensation to Emil Morton for supervisory services, the contract did not increase the amount or percentage of his ownership in the property, but conferred only a right to an extra interest in the profits, if any, as they should accrue (Bowling v. National Convoy & Trucking Co., 101 Fla. 634, 135 So. 541) and obviously the "agency" to perform the personal services of supervision of the construction and operation of the premises would not continue after Emil Morton's death. Nor does it appear that the appellees contend otherwise. In appellees' brief it is stated: "The Appellants devote almost their entire effort to a detailed discussion of the law of agency coupled with an interest despite the fact that this issue has nothing whatsoever to do with the question before the Court."
The appellees argue there was no ambiguity, and that the court properly could and did determine the intent of the parties regarding the disputed question from the terms and provisions of the contract.
We are unable to agree with the holding of the court, and the contention of the appellees, that the contract did not present an ambiguity. Not only was the contract silent as to whether Emil Morton's right to receive the extra interest in the profits as they should accrue (stated to be in consideration of his supervisory services) would, or would not survive or continue if his supervisory services should be terminated by his removal therefrom or by his death, but the contract also failed to contain a provision as to whether or not Emil Morton could be removed from such supervisory position for some sufficient cause. That latter latent ambiguity (as it would be presented in event cause for his removal should occur) was resolved pendente lite by agreement of the parties that the supervisory services could be terminated for stated causes, as set out in the consent decree in the prior action.
However, the intent of the parties respecting the former of those questions, recognized to be undetermined under the contract, was left by the consent decree to be subject to later determination in a court proceeding in that cause. As to the question thus reserved the contract presents a latent ambiguity because, although the language of the contract is clear, either of two results could follow in event of the termination of Emil Morton's supervisory services for cause or by his death.
The absence of any patent ambiguity in a contract will not preclude the existence of a latent ambiguity therein if, because of extrinsic facts or circumstances, a latent ambiguity is shown to exist or thereby arises. See Ace Electric Supply Co. v. Terra Nova Electric, Inc., Fla.App. 1974, 288 So.2d 544. In that case the court said:
"It is well established that in construing a contract the leading object is to ascertain and effectuate the intent of the parties. Where, under a latent ambiguity which is presented the intent may have been for one of two things, it is permissible, and is the duty of the court to receive and consider extrinsic evidence bearing thereon. This may include evidence of the circumstances surrounding the parties and of the purpose and object to be obtained, and declarations of intent, or bearing on their intent, made by the parties prior to or at the time of the execution of the instrument, and evidence as to the interpretation which the parties may appear to have placed thereon by their actions and the manner of their dealings thereunder."[2]
*840 As stated above, before the court on the hearing on motion for summary judgment there was some evidence from the contesting parties, relating to intent in this connection, which was in conflict. In the judgment it was stated "The court has no doubt about the intention of the parties to this contract". However, the court did not purport to base the decision on such conflicting extrinsic evidence as to intent of the parties to the contract, nor could the court have done so by summary judgment.
In holding from the wording of the contract that it was the intention of the parties for Emil Morton's right to the extra profits to continue in event his services were terminated by death or otherwise, the trial court concluded that such intent was shown by several provisions of the contract. First, as showing such intent, the court relied on paragraph 4 of the contract wherein deductions for depreciation for income tax purposes were provided to be "allocated among the owners in the same percentage as amortization is charged, as provided in sub-paragraph (a) of Paragraph 3". Since that provision would not be appropriate after the agency was ended, unless his right to extra profits also should continue, it appears to indicate an expectation of the parties that the added profit percentage and added amortization allocation by Emil Morton will be payable because the provisions therefor will be in effect, but it appears less indicative of intent therefor when it is considered that the contract did not go into the question of the effect which termination of Emil Morton's supervisory services would have on the provisions for such payments, and it would be reasonable to assume that payment requirement of the contract, like the requirement for payment of extra profits, would revert to figures based on the respective percentages of ownership interests if it was the intention of the parties that such added profits and payments of Emil Morton were to cease upon his removal or death.
Second, the court concluded that since the contract provided for the supervisory services to be rendered by Emil Morton without compensation, they should be treated as a "contribution to the joint venture, inuring to the benefit of the members thereof". That provision would appear to have little if any bearing on the intent of the parties. The provision that Emil Morton's services should be without "compensation" operated to prevent a direct charge therefor being imposed on the other owners, or the necessity to make current payments for the services as an expense of operation. By stating Emil Morton should receive an extra interest in the profits "in consideration" of his supervisory services, the contract made provision for Emil Morton to be compensated therefor, but only out of profits, if any. The latter furnishes basis to imply that Emil Morton was to be paid for the services which he should so render, but does not necessarily mean he would be entitled to such compensation if he did not perform the services or after his performance of such services should cease, when the contract was silent on those matters.
Third, the court found the contract indicated that upon Emil Morton, by his supervisory services, "bringing the joint venture to a profitable position, he is to own and be vested with 46% of the profits". The contract did not so state, and that conclusion of the court assumes such was the intention of the parties.
*841 Fourth, the court's construction of the contract as to the intent of the parties was based in part on the ground that if the parties had intended Emil Morton's additional interest in the profits (for supervisory services) to end upon termination of his services by death or otherwise, the contract would have so stated. On the other hand it could be said, with what would appear to be the better logic, that if it had been intended by the parties that the stipulated compensation to Emil Morton should continue after termination of the agency and be paid for services which were no longer being performed (something not usually done), it would have been so stated in the contract.
Fifth, the fact that Emil Morton was authorized by the contract to assign any part of the additional percentage of profits he was to receive "in consideration" of his supervisory services, was considered by the court as an indication that the parties intended such compensation to be payable if and after no such services were being performed or capable of being performed by him. We observe no basis for such conclusion, since the extra profits which Emil Morton could assign were only those which he should be entitled to receive under the contract.
Sixth, the court held it would be unreasonable to assume the parties intended that the interest "sold" by Emil Morton to Turchin, [which was an assignment of the right to receive a part of the said extra share of profits which were to be paid to Emil Morton] "was merely a contingency and that Robert Turchin could be cut off from his 8% interest in the profits, after paying the consideration therefor by the death of Emil Morton or his removal as supervisor". Regarding that holding of the court, as a basis for the construction the court placed on the contract, the appellants argue correctly that the partial assignment by Emil Morton to Robert Turchin is immaterial, for the reason that an assignee stands in the shoes of the assignor and his rights so derived cannot rise above those of his assignor. Florida East Coast Ry. Co. v. Eno., 99 Fla. 887, 128 So. 622; Union Indemnity Co. v. City of New Smyrna, 100 Fla. 980, 130 So. 453; Fred S. Conrad Construction Company v. Exchange Bank of St. Augustine, Fla.App. 1965, 178 So.2d 217.
Finally, the court was of the view that the customary provision appearing at the end of the contract, that the contract would be binding upon and inure to the benefit of the heirs, legal representatives and assigns of the parties, "clearly demonstrated" that the parties intended that Emil Morton's right to the added profits, above that to which his one-third ownership interest entitled him, would continue payable to his heirs or personal representatives if his services should be terminated by his death. Such a conclusion is not warranted. It begs the question. The rights and obligations of the contract which are binding upon and inure to the benefit of the heirs, representatives and assigns of the parties under such a contract provision are those created and provided for by the contract as expressed therein and intended by the parties, and not more or otherwise.
In summary, while the trial court properly endeavored to interpret the contract as to intention of the parties from the language of the instrument, it is our view that the above discussed features of the contract as worded did not furnish basis for the decision reached by the trial court, although it could eventuate that the same interpretation of the contract, rather than the contrary interpretation, is the one which is arrived at on consideration of its terms with the benefit of extrinsic evidence to which resort should be made to resolve the latent ambiguity that is present. See *842 Whitfield v. Webb, 100 Fla. 1619, 131 So. 786, 788.
We hold, as contended for by appellants, that the trial court erred in concluding that the contract presented no ambiguity with regard to the matter in dispute, and that no issues of fact were involved. Where there was presented the necessity, in construing the contract, to resolve the latent ambiguity which was disclosed to be involved as to the contingencies mentioned, it was error for the court to render a summary judgment construing the contract, with respect to such latent ambiguity, without regard to extrinsic evidence bearing on intent, and particularly when there was some conflicting evidence as to the intention of the contracting parties, notwithstanding the case when tried would be before the same judge. See Bache v. Lefcoe, Fla.App. 1964, 162 So.2d 525, 526; Smith v. Baker, Fla. App. 1968, 206 So.2d 409, 412; Westchester Fire Insurance Co. v. In-Sink-Erator, Fla. App. 1971, 252 So.2d 856, 858. Moreover, since the trial court does not appear to have regarded and treated the matter as one involving a latent ambiguity, all available evidence appropriate to be submitted bearing on the intent of the parties, to resolve such latent ambiguity, may not have been presented. See Ace Electric Supply Co. v. Terra Nova Electric, Inc., supra.
Accordingly, the summary judgment is reversed, and the cause is remanded for further proceedings not inconsistent herewith, including trial and determination by declaratory judgment of the question presented by the petition, as expressly reserved in the prior consent decree, based on the intent of the parties with respect thereto as it may appear from the contract aided by the evidence presented previously herein and such additional evidence relevant and material to resolution of the latent ambiguity as may be presented by or on behalf of the parties at the trial.
It is so ordered.
NOTES
[1] Such a proceeding to construe a contract as to rights thereunder which will arise in the future is authorized by § 86.011 of Chapter 86 Fla. Stat., F.S.A. relating to declaratory judgments.
[2] In this case it appears there may be an absence of bases for evidence of an interpretation which the parties placed on the contract as to the disputed question, by their actions, because the events which would prompt action by them thereon have not yet occurred, and the parties have had no opportunity to act under the contract with reference to such happenings. However, when the question appeared, in the prior action which resulted in the consent decree, there was some indication of how the parties would act on the basis of the contract if Emil Morton's supervisory services were terminated where it was shown the parties were in disagreement with respect thereto, with the Emil Morton group contending for a continuance of the extra profits rights and the other group of parties contending otherwise, as indicated by their failure to resolve the question and the recognition of necessity for its further or later determination.