349 So.2d 795 (1977)
M.H. FOSTER and A.N. Britt, Trustees, Appellants,
v.
Clarence JONES and Mary Ellen Jones, His Wife, Appellees.
No. 76-1566.
District Court of Appeal of Florida, Second District.
September 7, 1977.
*796 John R. Newcomer, Jr., of Yado, Keel, Nelson, Casper, Bergmann & Newcomer, Tampa, for appellants.
David L. Anderson, New Port Richey, for appellees.
HOBSON, Acting Chief Judge.
In this test case we are called upon to decide the validity of a "land covenant fee" and whether such a payment is supported by adequate consideration.[1] The trial court found no such consideration. We reverse and remand for further proceedings.
On December 12, 1969, William J. Morrison, as Trustee for the owner, Sadie Foster Trust, leased a tract of land to Florida Leisure Homes, Inc., which lease was duly recorded. Florida Leisure, acting as developer, was to construct and develop four condominium projects to be known as Imperial Embassy Condominiums I, II, III and IV. This lawsuit concerns only phase III of that condominium development. It should also be noted that whether or not this long-term lease (99 years) covered the land on which phase III is located was the central dispute below.
On September 5, 1970, Morrison assigned the lease to the present appellants, Foster and Britt, also trustees for the owner, Sadie Foster Trust. Shortly thereafter Foster and Britt, in conjunction with Florida Leisure, cancelled the long-term lease on condominiums phases I and II. Despite the dispute between the instant parties as to whether or not the lease given to Leisure Homes in 1969 ever covered the property on which Imperial Embassy III was built, there is evidence in the record that the lease was also cancelled with respect to this third phase.[2] Following the purported cancellation of the long-term lease, on or about August 16, 1971, the Declaration of Condominium of Imperial Embassy III was signed. It was recorded thereafter. The declaration provided that in consideration for cancellation of the long-term lease, creation of the condominium and conveyance of the condominium parcels the association would assume all of the obligations running to Florida Leisure Homes under the long-term lease and that every unit owner would be responsible for a pro-rata share of the cancelled lease fee, which became known as the "land covenant fee."[3]
*797 On March 20, 1972, the appellees contracted with Florida Leisure Homes to buy Unit 24-A of condominium III. Appellants did not participate in the sales negotiations nor did they sign the contract of purchase. However, as trustees for the owner, Sadie Foster Trust, appellants did convey a warranty deed to the appellees on April 12, 1972. The deed was allegedly delivered some months later. Both the contract of purchase and the warranty deed contain specific limitations subjecting the condominium unit to all provisions in the Declaration of Condominium. Despite these references in the documents of sale, appellees maintain they were not aware of the Declaration of Condominium, a land covenant fee or any aspect of a long-term lease. They admit that they were aware that included in the purchase arrangement was a requirement to pay a monthly maintenance fee for utilities, recreational facilities, and maintenance.
In 1974 the appellees first became aware that they were making a payment for a land covenant fee that was not being retained by the association for common expenses. Upon realizing that only one-half of his $45 maintenance fee was being applied to the condominium maintenance expenses, appellee Clarence Jones refused to continue paying that portion of the monthly maintenance bill allocable to the land covenant fee. Other members of the association, also having discovered the land covenant fee, refused to pay it.
On May 6, 1975, appellants filed a claim of lien on the property owned by the appellees for failure to pay the land covenant fee as per the Declaration of Condominium. In response the appellees filed a complaint to show cause why the lien should not be vacated. Appellants answered this complaint and counterclaimed to foreclose the lien. Following the filing of appellants' second amended counterclaim to foreclose the lien, the appellees filed an answer and some eighteen affirmative defenses including, inter alia, lack of consideration, illegal restraint on alienation, full payment for the condominium parcel, the fee was a mortgage without compliance with formal requisites and unconscionability.
Subsequently, on June 21, 1976, the cause went to trial and the trial judge ruled that the land covenant fee contained in the Declaration of Condominium was not supported by sufficient consideration and thus was null and void. His ruling was specifically based upon a finding of fact that the lease between Morrison and Florida Leisure Homes in 1969 covered only the erection of Imperial Embassy Condominiums I and II.
The narrow issue presented by this case is whether sufficient consideration exists for payment of the land covenant fee. Implicit in the answer to this question is the effect, if any, of the execution and subsequent cancellation of the long-term lease by appellants and Florida Leisure Homes with the lease obligation being incorporated in the Declaration of Condominium. Appellees assert, and the trial court found, that the lease executed by the appellants' predecessor never covered the property designated for construction of Imperial Embassy III. Thus, they posit that since any cancellation of a non-existent lease was a nudum pactum, then any consideration recited in the declaration as accruing because of the cancellation of the lease was similarly illusory, void and without effect. In the alternative the appellees contend that if the lease ever did cover phase III its cancellation, prior to the recording of the Declaration of Condominium, yields the same result, to wit, the consideration is illusory.
Our analysis of this unusual "land covenant fee" suggests that cancellation of the lease to Florida Leisure Homes is only one factor of "consideration" recited in the Declaration of Condominium. The disputed portion of the Declaration of Condominium pertaining to the land covenant fee as consideration provides in pertinent part,
M. ADDITIONAL PROVISIONS, COVENANTS, RESTRICTIONS, CONDITIONS AND LIMITATIONS:

(1) Reservation of Land Payment.
The improvements constructed, placed and installed on the land, described in Paragraph C hereof, were placed, installed *798 or constructed (as the case may be) by Florida Leisure Homes, Inc., a Florida corporation, a party to this Declaration, pursuant to a right-to-build covenant contained in a Long Term Lease with A.N. Britt and M.H. Foster, Trustees, Fee Owners of the land referred to herein as Fee Owner. In order to submit the condominium property, consisting of land and improvements, to condominium ownership and to convey condominium parcels therefrom, the undersigned, Florida Leisure Homes, Inc., requested the above Fee Owner to cancel the Long Term Lease, join in this Declaration, and when requested by Florida Leisure Homes, Inc. to execute Warranty Deeds conveying the condominium parcels to the designees or assigns of Florida Leisure Homes, Inc. The sole consideration running to the said Fee Owner for the cancellation of the Long Term Lease, the execution of this Declaration, and, subsequent hereto, the conveyance of the condominium parcels to the designees or assigns of the corporation, was and is the right to receive from the unit owners an annual payment of moneys equivalent to that which the Fee Owner would have received by virtue of the cancelled Lease.
In consideration of the foregoing, the undersigned parties hereby establish and set forth in the following paragraphs conditions, reservations, restrictions, covenants and equitable servitudes which shall run with the land, to-wit:
(a) There is hereby reserved unto the said Fee Owner, his heirs, executors, administrators, successors or assigns, the right to receive the total sum of TWENTY THOUSAND THREE HUNDRED AND FIFTY-EIGHT ($20,358.00) DOLLARS per annum from the owners of the condominium parcels in this condominium, and all owners, by the acceptance of their respective Deeds from the said Fee Owner, agree to pay their hereinafter allocated portion of said annual sum, for that period of time and in the manner hereinafter stated.
We submit that this reservation of land payment provision, particularly, that portion relating to consideration, is susceptible of more than one construction. Facially the consideration clause, when read with the previous statements pertaining to the circumstances giving rise to the Declaration of Condominium, supports the appellees' position that the cancellation of the lease and payments due under it is the consideration for the land covenant fee. Thus, if no lease ever covered phase III, or if the lease was cancelled prior to the declaration, then the consideration is illusory. However, we are constrained to interpret this provision otherwise for two reasons.
First, the consideration clause states.
The sole consideration running to the said Fee Owner for the cancellation of the Long Term Lease, the execution of this Declaration, and, subsequent hereto, the conveyance of the condominium parcels to the designees or assigns of the corporation ... . (emphasis supplied)
Consequently, within Section M(1) of the declaration there are three factors listed as representing the consideration for the land covenant fee, namely: 1) cancellation of the lease; 2) execution of the declaration; and 3) conveyance of the condominium parcels. Thus, there is no merit to the appellees' contention that the sole consideration for the land covenant fee was and is the cancellation of the long-term lease, which appellees contend was either nonexistent or previously cancelled prior to the declaration being filed. The relevant inquiry at this juncture is, then, whether the cancellation of a nonexistent lease, which forms one of the bases of consideration in the Declaration of Condominium, is sufficient to vitiate the entire land covenant fee because this factor is illusory. We submit that it is not.
The second and related reason for sustaining this fee on the basis of a finding of consideration is the purpose of the obligation as set forth in the Declaration of Condominium. Specifically, extensive review of the transcript and records filed in this cause lead us to the conclusion that when the Declaration of Condominium was filed it was contemplated that these annual *799 payments or land covenant fees would be payments on the purchase price of the land.[4] This construction is derived from the language contained in the consideration clause above, i.e., "... [T]he conveyance of the condominium parcels to the designees or assigns of the corporation... ." Moreover, such a result, not being dependent on the existence or nonexistence of the lease, makes consideration of the cancellation of such a lease irrelevant. This conclusion is further supported by the fact that any lack of consideration flowing from any cancellation did not accrue to the appellees. Instead Florida Leisure Homes would be the only proper party to effectively raise a lack of consideration argument with respect to the lease.[5]
We think such a construction comports with the general rules governing the interpretation of contracts. For example, at 7 Fla.Jur. Contracts § 84 (1956) it is posited,
If the language of a contract is contradictory, obscure, or ambiguous, or its meaning is doubtful, so that it is susceptible of two constructions, one of which makes it fair, and such as a prudent man would naturally execute, while the other makes it inequitable, unnatural, or such as a reasonable man would not be likely to enter into, then the reasonable, logical, and rational interpretation should be adopted.
In the case sub judice were we to hold the land covenant fee invalid for a lack of consideration, the appellants, as fee owners, would have in effect, deeded away the land composing each condominium parcel without compensation.[6] Such a result is neither equitable nor do we believe there exists competent and substantial evidence in the record to support such a construction. This view is also consistent with the general policies of construing contracts, or, in this case, covenants in a Declaration of Condominium, in favor of validity rather than invalidity. 7 Fla.Jur. Contracts § 86 (1956).
By far the most important facet of our upholding this land covenant fee on the basis of adequate consideration is the desire not to elevate the form of the transaction over the substantive purpose of that arrangement. Whether the lease ever existed as to phase III or not was inconsequential. The appellants, as fee owners, simply wanted payment for the land. In turn the developers, as parties to the sale of the unit, also sought and received compensation for their contribution to the development. However, the sale of their unit to the appellees was directly dependent on the conveyance of the warranty deed by appellants. Both documents, the contract of purchase and the deed, contain specific references to the Declaration of Condominium. We decline to comment on any issue of notice with respect to these documents as the trial court has not yet decided that issue.
Finally, we agree with the appellees that this land covenant fee is a highly unusual financing arrangement for the purchase of the land, separate and apart from the purchase of the unit itself. In addition, neither of the parties to this cause have pointed us to any cases construing, upholding or overturning similar arrangements. Nevertheless, it is fundamentally accepted that competent parties have the utmost liberty of contracting and agreements voluntarily and fairly entered into will be enforced by the courts except where illegal, against public policy, or in contravention of *800 statute. Our holding in this case goes no further than a finding of adequate consideration in the Declaration of Condominium for the payment, by the unit owners, of the land covenant fee. On remand the proceedings should be continued to allow the appellees to go forward to demonstrate the validity of their affirmative defenses to appellants' lien foreclosure claim. At that time questions of notice, the nature of the transaction, unconscionability, the effect of representations made at or before sale, etc., will be in order.
Accordingly, the judgment below is reversed and remanded consistent with the view expressed herein.
GRIMES and OTT, JJ., concur.
NOTES
[1] In addition to the appellees there are some 85 other individual condominium owners who have refused to pay this land covenant fee. Following the filing of numerous claims of lien by the appellants against each one of these unit owners, it was agreed that a single test case would be preferable to conducting 85 simultaneous suits.
[2] Appellants in their brief assert that it was stipulated below that the lease covered condominium III and furthermore that the lease was inadvertently cancelled by the cancellation of the lease on phase II. Appellees dispute that any such stipulation was made.
[3] Appellants were entitled under their long-term lease to receive some $20,358 from Florida Leisure Homes per annum. This sum, mentioned specifically in the declaration for condominium III, was then allocated on a pro-rata basis depending on each association member's percentage of ownership. In this case the appellees were responsible for some 1.15% of the stated land covenant fee, or approximately $20.53 per month.
[4] It should be noted that appellees purchased their condominium unit from Florida Leisure Homes, as developer of the units, for $16,990. Appellants, in essence, contend that this price only reflects the purchase price for the unit itself. They further posit that the land covenant fee represents the consideration flowing to them for the deeding away of their land to the designees or assigns of the developer pursuant to the terms of the Declaration of Condominium.
[5] Even then, assuming the lease covered phase III, it could be argued that Florida Leisure Homes has received consideration for its cancellation of the long-term lease since it was the developer and was afforded the rights to construct and sell units at the complex.
[6] See note 4, supra.