381 So.2d 1194 (1980)
George A. HUNT, Jr., Appellant,
v.
FIRST NATIONAL BANK OF TAMPA, As Trustee, Appellee.
No. 78-1768.
District Court of Appeal of Florida, Second District.
March 28, 1980.
*1196 Michael A. Smith of Goza, Hall, Peacock & Peters, Clearwater, for appellant.
Peter J. Winders, James D. Wing and J. Brent Walker of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, for appellee.
OTT, Judge.
Appellant brought this action for a declaration of rights under a lease of his unimproved tract of land to appellee as trustee for the principals in the Kash N' Karry food chain. The trial court summarily declared the rights of the parties and, after an evidentiary hearing concerning damages, entered a money judgment in favor of appellant. The court erred in resolving factual issues by summary judgment, and we therefore reverse both the declaratory and the coercive provisions of the judgment.
The lease itself, for ninety-nine years at a rental of $20,000 per year, is unremarkable. All the problems stem from an addendum which was executed simultaneously with the lease. It provided that rent was not to accrue[1] until such time as lessee completed its "planned construction" on the demised premises[1] of a small shopping center complementing the adjacent Kash N' Karry supermarket.
Appellant filed his complaint some forty-four months after the lease was signed. Appellee had not so much as commenced, let alone completed, the construction of the shopping center. The only use of the land had been by the truckers supplying a Kash N' Karry supermarket located on appellee's adjacent property. A small area opposite the loading dock at the rear of the market had been blacktopped for that purpose, and a short length of shell road had been laid down to connect the blacktop area to the public street. Appellee had paid no rent, except for the $40,000 paid upon execution of the lease, which consisted of the first year's rent and a $20,000 deposit to secure future rent.
The court below declared that there is no ambiguity in the addendum, and that its legal effect is that (1) no rent becomes due and payable under the lease unless and until appellee completes construction of the shopping center as originally planned or subsequently modified, (2) appellee is not obligated to construct the planned improvements, and (3) appellee's use of the premises was "outside the terms of the lease", entitling appellant to the reasonable value of the use actually made. The court then took evidence on the latter issue and entered judgment against appellee for $100 per month, a total of $4,800.[2]
While we agree that the addendum does not obligate appellee to construct the shopping center, or any other improvements, we think the document is ambiguous. It provides no answer to two questions: (1) with respect to the moratorium on rent until completion of the planned *1197 construction, what happens if the construction is never completed; (2) what happens if, instead of commencing and completing construction of the shopping center, appellee uses the premises for other purposes? These are latent ambiguities, requiring extrinsic evidence bearing upon the intent of the parties and thus precluding summary judgment.
If a contract is clear, complete and unambiguous, there is no need for judicial construction. Hamilton Construction Co. v. Board of Public Instruction, 65 So.2d 729 (Fla. 1953). But even the most cautious drafting, and the most exhaustive imagination, rarely covers every possible contingency. If a contract fails to specify the rights or duties of the parties under certain conditions or in certain situations, then the occurrence of such condition or situation reveals an insufficiency in the contract not apparent from the face of the document. This insufficiency is called a latent ambiguity, and although (as previously noted) the Florida rule is that courts will not construe patent ambiguity, they are frequently called upon to determine what the parties would have included in their contract had they anticipated an occurrence which they in fact overlooked.[3]Morton v. Morton, 307 So.2d 835 (Fla. 3d DCA 1975), cert. denied, 324 So.2d 90 (Fla. 1975). In doing so, the function of the court is to ascertain, insofar as possible, the intent of the parties. Bal Harbour Shops, Inc. v. Greenleaf & Crosby Co., 274 So.2d 13 (Fla. 3d DCA 1973). Extrinsic evidence is not only admissible on that issue, but is frequently required where the instrument itself does not provide sufficient insight into intent. Morton v. Morton, supra; 11 Fla.Jur.2d Contracts §§ 107, 114, 117 (1979).
There are certain presumptions or guidelines that assist the court in arriving at its conclusion as to what result the parties intended under the unanticipated circumstances. A reasonable interpretation is preferred to one which is unreasonable, Bouden v. Walker, 266 So.2d 353, 354 (Fla. 2d DCA 1972), and an interpretation leading to an absurd conclusion must be abandoned for one more consistent with reason and probability. Paddock v. Bay Concrete Industries, Inc., 154 So.2d 313, 316 (Fla. 2d DCA 1963). Where one interpretation would lead to an agreement which is fair and equitable, while another interpretation would result in an unfair and inequitable agreement, the former must be selected. Foster v. Jones, 349 So.2d 795, 799 (Fla. 2d DCA 1977). Finally, whenever possible a contract should receive such construction as will uphold it rather than render it invalid. Foster v. Jones, supra.
For the guidance of the court below in resolving the issues which we have noted, we add the following observations regarding the merits of this case.
First, there is sound authority for appellant's assertion that the moratorium on rent continued for only a reasonable time after the execution of the lease. We find significant relevance in the reasoning and language of an early case, Whiting v. Gray, 27 Fla. 482, 8 So. 726 (1891), where the defendant had contracted to sell lumber to the plaintiff deliverable at a specified number of board feet per day commencing on a certain date "or as soon thereafter as [the plaintiff's] vessel can be ready." 27 Fla. at 483, 8 So. at 726. Holding that the contract should be construed as requiring the plaintiff to have his vessel at dockside within a reasonable time after the stated date, the Florida Supreme Court reasoned:
We do not think it reasonable to hold that the parties meant by the terms used . . that the defendant was to be bound to deliver the lumber whenever the plaintiff might charter a vessel, however long it might be before he could in fact do so; or, in other words, that his obligation would continue indefinitely, until the plaintiff succeeded in chartering a vessel.
27 Fla. at 487-488, 8 So. at 727. See also Patrick v. Kirkland, 53 Fla. 768, 43 So. 969 (1907); Doolittle v. Fruehauf Corp., 332 So.2d 107 *1198 (Fla. 1st DCA 1976); Tyner v. Woodruff, 206 So.2d 684 (Fla. 4th DCA 1968).
It is for the trial court to determine from the evidence, of course, whether the parties intended that the construction was to be completed by a definite date. The existence of any such intent or agreement seems rather doubtful, and even appellee denies (indeed, predicates its position on the absence of) any such agreement on this appeal. Consistent with that position, appellee maintained in the trial court that although it had no exact schedule it had anticipated that construction would commence within "a reasonable time" after the lease was signed and be completed three to twelve months thereafter. Naturally, the trial court will have to determine what would have been a reasonable period after execution of the lease for the completion of construction. The court should then declare that rent commenced as of that date.
There are two additional grounds for rejecting appellee's argument that no rent will ever be due and payable unless and until it completes construction of the shopping center. The net effect of this ruling is that appellant's property is tied up for ninety-nine years. Rent will not be payable unless appellee decides to commence construction and unless and until such construction is completed. If construction is never completed, so that rent never starts accruing, at the termination of the lease appellee undoubtedly would demand refund of the $20,000 deposit and probably would even be entitled to a refund of the $20,000 it paid as advance rent.[4] This presents an unconscionable situation, which in itself is sufficient to invalidate an agreement. Point East One Condominium Corp. v. Point East Developers, Inc., 348 So.2d 32, 36 (Fla. 3d DCA 1977). Moreover, any such arrangement would be invalid because there would be no mutuality of obligation. Appellant would be deprived of the use of the property but appellee would not be obliged to pay rent. No contract can bind one party and not the other. Orbit Construction Co. v. Trail Development Corp., 198 So.2d 341, 343 (Fla. 2d DCA 1967).
The second area meriting discussion here concerns appellee's novel theory that it can use the property and pay only nominal charges for doing so if the "planned construction" is never completed. Of course, most of the problems in this area will be obviated by the determination of the date on which the agreed rental began to accrue. However, we note for whatever pertinence it may have that appellee bargained for and obtained a lease entitling it to use the premises for whatever lawful purpose it desired. There is absolutely no basis in fact for an assertion that any lawful use appellee made of the property was "outside the lease". The only question would be whether such use, if made before a reasonable time for completing the construction had expired, activated the accrual of full rent or only some reasonable increment thereof. This latent ambiguity, as we have already noted, would require extrinsic evidence concerning the intent of the parties.
One further observation regarding the aspect of the case just discussed; if the trial court should conclude that appellee's use of the property began while the rent moratorium was still in effect, and did not itself trigger the accrual of full rent, we are constrained to note that the present record contains no support whatsoever for the finding that the reasonable value of such use was only $100 per month. Since a trial of all the issues must be held, we are confident that the noted error will not occur again.
The judgment is reversed in its entirety and the case is remanded to the court below for trial.
BOARDMAN, Acting C.J., and RYDER, J., concur.
NOTES
[1] The parties spent the bulk of their time, both in the trial court and here, arguing whether the terms "accrue" and "planned construction" are ambiguous. They obviously are not. Both are common, easy to understand terms with unmistakable meanings. Even if they were ambiguous, it would be a patent ambiguity. Florida courts do not attempt to construe patent ambiguity because it would require, in effect, the rewriting of a contract with respect to a matter the parties obviously had in mind when they drew the agreement. Landis v. Mears, 329 So.2d 323 (Fla. 2d DCA 1976).
[2] We reject appellee's contention that this appeal must be dismissed because appellant accepted the money awarded him for "use outside the lease". There are two exceptions to the "acceptance of benefits" rule, both applicable here. First, where the relief denied is separate and severable from the relief granted, the rule does not apply. Brown v. Epstein, 208 So.2d 836 (Fla. 4th DCA 1968). The general rule also does not apply where appellant is entitled in any event to at least the amount received. Hartley v. Hartley, 134 So.2d 281 (Fla. 2d DCA 1961).
[3] In short, it isn't what the parties should have done that invites and sanctions judicial intervention, it's what they would have done had they thought to do it.
[4] We find no support in the record for appellee's contention that this advance payment was for an option tying up appellant's property for 99 years.