SHEPHERD, C.J.,
dissenting.
I respectfully dissent from the majority’s affirmance of this case.
The majority opinion recounts Mr. Fernandez’s wrongdoings, concluding therefrom that “Mr. Fernandez’ attempt to reap *560 the benefit of his own breaches should not be countenanced.” However, the task at hand is not “what should be countenanced,” but rather what “is countenanced” under the law. Strict application of the law to the facts of this case requires reversal. A brief summary of the facts and procedural background of this case is necessary to explain my dissent.
Facts and Procedural Background
This is an appeal by Jorge L. Fernandez, a former City Attorney for the City of Miami, from a final judgment rendered after a non-jury trial, rejecting his claim that the Miami City Commission breached his agreement of employment with the City by failing to pay him $274,271 in severance pay and pay for unused vacation and sick days after firing him for submitting false expense reports to the City Finance Department.
Fernandez was appointed City Attorney on July 29, 2004, by Resolution No. 04-0533, drafted by the Interim City Attorney.[5] When the City Commission passed the resolution appointing Fernandez, the Commission approved a term sheet (the 2004 term sheet) attached to the resolution, describing Fernandez’s salary and other benefits. Pursuant to the resolution, Fernandez initially received a salary of $198,382.08, as well as such benefits as thirty-one vacation days a year, twelve sick days, car and cell phone allowances, and an annual expense account of $5,000. With respect to vacation and sick leave, the term sheet stated, “At time of separation: payment of all accumulated vacation and sick leave.” As to severance, it stated, “At the time of separation, the City may consider the payment of six months compensation as severance, at its discretion.” (Emphasis added.)
In early 2006, Fernandez decided to ask the Commission for an increase in his compensation and benefits, and so prepared a revised term sheet (the 2006 term sheet) for presentation to the Commission. The revised term sheet called for Fernandez’s salary to be raised to $218,220.29, retroactive to September 2005, with an additional ten percent increase in September 2006, and a $10,000 incentive. It also increased Fernandez’s annual vacation to forty-five days and his expense account to $10,000 annually. There was no change in the number of days of sick leave, or the provision relating to the payment of sick leave on separation. However, the revised term sheet deleted the phrases “the City may consider” and “at its discretion,” from the existing severance provision, leaving it to read “At time of separation, payment of six months compensation as severance.” As thus revised, the proposed compensation package, including a verbatim, side-by-side comparison of the existing term sheet and the revised term sheet, was circulated by the Commission’s designated representative, then Commissioner Tomas Regalado, to the entire Commission for comment, along with a glowing performance evaluation.[6]
On July 13, 2006, the Commission passed Resolution No. 06-0434 by a 3-2 *561 vote, approving Fernandez’s proposed term sheet without modification. During its deliberations that day, Commissioner Haskins recognized the severance provision as a “guaranteed” severance provision, but in the context of disagreeing with any increase in compensation for Fernandez rather than conditions or limitations on payment. There was no specific mention of the similar provision relating to payment of vacation and sick leave. Although present at the July 18 meeting of the Commission, Fernandez, made no effort to explain the differences between the initial 2004 term sheet and the one prepared by him and approved on July 13,2006.
One year later, Fernandez pled nolo contendere to two misdemeanor counts of submitting false official statements. Fernandez submitted his resignation to the City, but the Commission, in a public display of indignation and betrayal, rescinded the resignation and terminated him. It also unanimously rejected Fernandez’s request for severance pay and pay for unused leave.
In April 2008, Fernandez sued the City in a one-count complaint for breach of contract. In response, the City filed affirmative defenses, including inter alia, that Fernandez’s fraud, theft, and alleged lack of candor breached his fiduciary duties and other obligations to the City, and that allowing Fernandez to collect the money would run afoul of Florida’s strong public policy against public corruption. The City also counterclaimed for civil theft, breach of fiduciary duty, fraud, conversion, and breach of oath of office.
After a two-day bench trial, the trial court entered Final Judgment in favor of the City on Fernandez’s breach of contract claim. The Court reasoned:
6.With regard to the severance pay that Fernandez seeks, the Court finds that the term sheet that Fernandez prepared and presented to his client, the Commission, in or about July, 2006 was ambiguous in that it never addressed whether the severance would be owed even if Fernandez were discharged for cause after being adjudicated guilty of committing a crime against the City. The Court resolves any ambiguity against the drafter of that provision, Fernandez, and therefore concludes that the severance provision cannot be read to require payment in the event Fernandez was terminated for cause after being adjudicated guilty of committing a crime against the City.
7. The Court further finds that Fernandez breached his fiduciary duty to the City when he failed to explain to the City Commission the view which he expressed at trial that he would be entitled to the severance pay even if he were to be discharged for committing a crime against the City. This breach of fiduciary duty prevents Fernandez from prevailing on his claim for severance.
8. Separately, the Court determines that Fernandez is not entitled to severance, vacation, or sick leave because he materially breached his contract with the City when he falsified expense allowance reimbursement records, thus stealing from the City and perpetrating a fraud on the City. This conduct, as well as Fernandez’s failure to disclose the potential consequences of the change to his severance provision, constituted a material breach of Fernandez’s contract. As a result of this breach, Fernandez is not entitled to collect severance, vacation leave, or sick leave.
At the same time, the court found in favor of the City on its counterclaims in the total amount of $8,093, which, after being trebled as required by Florida’s Civil Theft Statute and then adjusted to account for a $3,093.44 restitution payment made by *562 Fernandez to the City, resulted in the entry of a final judgment in favor of the City in the sum of $6,185.56. Soon thereafter, the trial court • entered a another judgment in favor of the City against Fernandez for $95,528.32 in attorney’s fees pursuant to the Civil Theft Statute and costs in the amount of $17,455.68.
Because I find the severance and leave payment provisions to be unambiguous and enforceable as a matter of law, I would reverse the judgment of the trial court on Fernandez’s one-count complaint and remand for entry of judgment in the sum of $274,271[7] in favor of Fernandez, subject, ■ of course, to an offset of the amounts owing on the City’s counterclaims.
Analysis
The court below and the City here seek to have us insert a “crime exception” into the two separation clauses in this case. Because the clauses do not expressly address whether the severance and leave payments would be owed if Fernandez was discharged after being adjudicated guilty of committing a crime against the City, the lower court found, and the City continues to assert here, that the provisions are “ambiguous” on the dubious ground that Fernandez was the “drafter” of both.[8] However, there is no uncertainty in the phrase following the allocation of days of vacation and sick leave to Fernandez, “At time of separation: payment of all accumulated vacation and sick leave,” or on the severance line of the revised term sheet, “At the time of separation, payment of six months compensation.” The word “separation” simply means cessation of a contractual relationship, regardless of how or why it occurs. See Black’s Law Dictionary 1487 (9th ed. 2009) (“[Separation ... 3. Cessation of a contractual relationship, esp. in an employment situation.”); see also Webster’s Third, New International Dictionary 2070 (1993) (“[S]eparation ...4b termination of contractual relationship: resignation, discharge C ~ from the serviceD C ~ from employmentD Ca serious breach of accepted standards of department ... may be punished by loss of social privileges, or ~ ... D”).
The plain language of the two phrases covers all conditions under which Fernandez might leave the employ of the City. If the City had so desired, it could have inserted a cause provision, or a more limited “crime provision,” into the agreement. We cannot. See Fernandez v. Homestar at Miller Cove, Inc., 935 So.2d 547, 551 (Fla. 3d DCA 2006) (“[A] court is powerless to rewrite [a] contract to make it more reasonable or advantageous to one of the parties.” (citing Emergency Assocs. Of Tampa, P.A. v. Sassano, 664 So.2d 1000, 1003 (Fla. 2d DCA 1995)); see also Green v. Life & Health of Am., 704 So.2d 1386, 1391 (Fla.1998) (“[C]ourts are powerless to rewrite contracts or interfere with the freedom of contracts or substitute [their] judgments for that of the parties' to the contract in order to relieve one of the parties from apparent hardships of an improvident bargain.” (quoting Quinerly v. Dundee, 159 Fla. 219, 31 So.2d 533, 534 (1947)). In fact, if we were now to go about attaching conditions to the severance and leave provisions of the parties’ agreement, we would be at a loss to know how *563 broad to make the conditions.[9]
The City cites two cases in support of its position that the two phrases are ambiguous, Jenkins v. Eckerd Corp., 913 So.2d 43 (Fla. 1st DCA 2005) and Hunt v. First National Bank of Tampa, 381 So.2d 1194 (Fla. 2d DCA). The City’s reliance upon these two cases is misplaced. Jenkins actually supports Fernandez. In Jenkins, a lessor, in a predicament analogous to that of the City in the case before us, sought to insert a phrase, “its successors and assigns,” into a shopping center lease agreement which stated, “should Delchamps [the anchor tenant] fail or cease to lease and pay rent for its store in the Shopping Center ... Lessee shall have the right and privilege of ... canceling th[e] lease, and terminating all of its obligations hereunder.” Shortly after signing the lease, Del-champs merged with Jitney Jungle, a like grocery chain, which took over the operation of the store. Thereafter, Jitney Jungle filed for bankruptcy protection under Chapter 11, and the lease was assigned to Bruno’s Supermarkets. Although the anchor space was at all times being operated as a grocery chain, albeit under three different names, Jack Eckerd Drugs, Inc., a concededly proper assignee of the lessee’s interest in the lease, invoked the plain language of the lease, i.e. that lessee had the right and privilege to cancel if Del-champs were not present on the property, in an effort to avoid a claim for money damages for breach of lease brought against it by the lessor. ' The trial court found the lease language to be unambigu-oüs and enforced it as written in favor of the lessee. The Court of Appeal affirmed, reasoning:
The contracting parties here had the ability to negotiate and establish ... their respective rights, duties and remedies for the entire term of the lease and to express those rights and duties in writing as accurately as feasible.... Although the remedy of termination provided ... may be harsh, it is the remedy the parties negotiated and expressly set forth in writing.
913 So.2d at 52.
The second case cited by the City demonstrates the flaw in its reasoning in the case before us. In Hunt, an addendum to a 99-year lease provided that a $20,000 annual rent payment was not to commence until such time as lessee completed its “planned construction” of a small shopping center on the premises. Forty-four months into the lease term, lessee had not commenced, let alone completed, the contemplated construction. The lessor sought a declaration of his rights under the lease. Unlike our case, in which the contested phrases by their terms covered all contingencies which might occur, the contested phrase in Hunt posed unanswered questions: (1) what would happen if construction was never completed; (2) what would happen if instead of commencing and completing construction of the shopping center, the lessee was using a portion of the property for another purpose, such as a truck by-way to an adjacent store. On these facts, the District Court of Appeal in Hunt remanded the case for consideration of parol testimony to determine what the parties reasonably intended. The reasoning and holdings of Jenkins and Hunt are consistent with and support the reversal of the trial court decision in this case.
Moreover, I find Barakat v. Broward County Housing Authority, 771 So.2d 1193 (Fla. 4th DCA 2000), to be legally *564 indistinguishable from the case before us. In Barakat, Russell Barakat was employed as the Executive Director of the Broward County Housing Authority (BCHA) when, on May 6,1996, he was convicted of filing a false tax return. As a result of the conviction, the U.S. Department of Housing and Urban Development (HUD) advised BCHA that Barakat was suspended from participating directly or indirectly in HUD programs. As a result of the suspension, Barakat’s employment was terminated by BCHA.
The BCHA resolution pursuant to which Barakat was employed provided in part:
6. Should Barakat be terminated, then he will be given severance pay in the amount due, as if said contract had run its full length.
7. In no case, shall Barakat be considered to have a property right in his office. Barakat is not to be considered an at will employee of the Broward County Housing Authority and may not be terminated without cause by the Bro-ward County Housing Authority.
Id. at 1194. The Court of Appeal enforced the contract as written, stating:
It is never the role of a trial court to rewrite a contract to make it more reasonable for one of the parties or to relieve a party from what turns out to be a bad bargain. Dickerson Florida Inc. v. McPeek, 651 So.2d 186, 187 (Fla. 4th DCA 1995). A fundamental tenet of contract law is that parties are free to contract, even when one side negotiates a harsh bargain. Green v. Life & Health of Am., 704 So.2d 1386, 1391 (Fla.1998). Had the BCHA wanted to provide for severance pay only when Barakat was terminated without cause, it could have made that a requirement in the Resolution.
Id. at 1195.
Sink v. Abitibi-Price Sales Corp., 602 So.2d 1313 (Fla. 4th DCA 1992) also is instructive. Sink was president of Jaffe’s Office Products, a division of Abitibi-Price Sales Corporation. Sink was in negotiations with Abitibi-Price for the purchase of the Jafife Division. To this end, the parties entered into a management agreement which provided Sink would receive as severance, lump sum salary and benefits for twelve or fifteen months should the agreement be terminated. It also stated the agreement would be void if Sink was terminated for cause.
Thereafter, Sink decided not to purchase the Jaffe division and the parties entered into a new termination agreement, including therein a provision for a lump-sum severance of twelve months salary totaling $208,129.32. As in our case, the agreement contained no conditions or limitations on its payment.
Sink was given his severance check. Several days later the comptroller of the company discovered Sink had stolen rebate checks payable to the company, and put a stop payment on the severance check. Sink filed a breach of contract action against Abitibi-Price, who counterclaimed for breach of fiduciary duty. After a bench trial, the trial court entered final judgment for Abitibi-Price on Sink’s breach of contract claim and final judgment for Sink on the counterclaim.
Sink appealed. The Fourth District determined that, as a matter of law, a novation occurred and the parties entered into a completely new agreement, which unambiguously entitled Sink to $208,129.42 in severance pay. The case was reversed and remanded to the trial court to enter judgment for Sink.
The City seeks to distinguish these cases on the ground that neither of the plaintiffs in those cases was an attorney. I find the distinction immaterial. During *565 negotiations on the employment contract, the relationship between Fernandez and the Commission was employer/employee and not attorney/client. Pride Int’l, Inc. v. Bragg, 259 S.W.3d 839, 850 (Tex.App.2008) (“[A] corporate officer acts in his individual capacity, as is evident that the company and employee are adverse to each other in the context of negotiating that employee’s compensation.”); In re Walt Disney Co. Derivative Litigation, 906 A.2d 27, 49-51 (Del.2006) (determining president did not breach his fiduciary duty when he negotiated and accepted severance provisions of employment agreement or when he accepted full payout upon termination). Fernandez had a statutorily recognized right to negotiate his salary and benefit package with the Commission. See § 112.313(5), Fla. Stat. (2005) (“No local government attorney shall be prevented from considering any matter affecting his or her salary, expenses or other compensation as the local government attorney, as provided by law.”); Hillsborough Cnty. v. Sutton, 150 Fla. 601, 8 So.2d 401 (1942) (enforcing agreement entered by County Commission to hire attorney and pay him an annual salary). It defies credulity to think the five-member City Commission, all of whom were successful businessmen and businesswomen, did not appreciate the context of the moment.
Nor can it be said that this is a case where a more powerful party was seeking to impose his will on a weaker party. See Samuel Issacharoff, Contracting for Employment: The Limited Return of the Common Law, 74 Tex. L.Rev. 1783, 1788 (1996) (“[C]haracteristic indicators of impediments to full and equal bargaining [are]: significant disparities in bargaining power between offeror and offeree; contracts of adhesion drafted by the offeror; asymmetries in the ability to breach the contractual guarantee of security; and the inability to seek a market remedy in the event of a breach.”). The contracting parties here had the ability to negotiate and establish their respective rights, duties and remedies in such fashion as they wished.
Finally, the City urges us to affirm the judgment in this case on the basis of the state’s strong public interest against public corruption. At first glance, the City’s suggestion seems appealing. Precluding Fernandez from collecting his severance, unused vacation pay, and pay for unused sick days appears to mete out a kind of “rough justice” to him for his transgressions. Upon closer examination, the City’s suggestion is more problematic. The City does not seek to rescind Fernandez’s employment agreement. In fact, it has affirmed the agreement and obtained a judgment for sums unlawfully received. By all accounts, Fernandez’s service to the Commission was impeccable while he enjoyed the office of City Attorney. He was as contractually entitled to this additional compensation upon termination as he was to every paycheck he received. I can appreciate that the City now finds itself in a spot not to its liking; however, although the law provides for punishment of illegal acts, the forfeiture of earned income under the terms of the contract in. this case is not one of them.
I would reverse the final judgment in this case for entry of judgment in favor of Fernandez in the amount of $274,271, subject to an offset of the amounts owing on the City’s counterclaims.

. Fernandez previously had served as Miami’s City Attorney from 1988 to 1991, when he accepted a position as County Attorney in Sarasota, Florida. His tenure there lasted thirteen years when, in 2004, he once again was hired as City Attorney for the City of Miami. Unlike other executives with the City, the City Attorney officially reports to the City Commission.

. A copy of the side-by-side comparison included in the proposed compensation package circulated by Commissioner Regalado is annexed to this opinion as Exhibit "A.” The package was provided to each Commissioner approximately one week before the date of the Commission meeting where the package was scheduled for consideration.

. The City does not dispute this calculation. It is composed of $120,876.65 in unused vacation, $25,228.50 in unused sick leave and $128,615.86 in severance pay.

. In fact, he was the drafter of only one of the two clauses, and, as described earlier, the one he drafted merely modified some of the terms of an earlier agreement drafted by a member of the then City Attorney’s staff. See Exhibit "A.”

. For example, the provision might be an absolute cause restriction, a discretionary for cause restriction, a broad illegal acts restriction, or one where only the City was the victim.