NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

PAMELA MORRISON,                    )
                                    )
            Appellant,              )
                                    )
v.                                  )        Case No. 2D17-3309
                                    )
JAMES MORRISON,                     )
                                    )
            Appellee.               )
_____ )

Opinion filed May 11, 2018.

Appeal from the Circuit Court for Sarasota
County; Stephen M. Walker, Judge.

Andrea M. Johnson of Law Office of
Andrea M. Johnson, P.A., Bradenton; and
Kathi B. Halvorsen of Kathi B. Halvorsen,
P.A., Sarasota, for Appellant.

Richard Weissfeld, Sarasota, for Appellee.

VILLANTI, Judge.

Pamela Morrison (the Former Wife) appeals the order that denied her

second amended motion for enforcement of the marital settlement agreement (MSA)

entered between her and James Morrison (the Former Husband). Because the trial

court applied the incorrect legal standard when interpreting the parties' MSA and

because resolution of the matter will require consideration of evidence, we reverse and remand for further proceedings.

The parties were married for twenty-seven years before filing for dissolution. Apparently, the parties elected not to save for retirement, relying instead on the fact that the Former Husband's parents were quite wealthy and that he expected to inherit large sums of money from them.

In the parties' MSA, as part of equitable distribution, the parties agreed that the Former Husband would pay the Former Wife specified percentages of the "inheritance funds received" by the Former Husband after both of his parents died. The MSA specifically stated that it was the parties' "intention to utilize the inheritance for both of their elder years." The MSA also required the Former Husband to maintain life insurance as security for this agreed obligation, with the insurance obligation ending "if the Wife receives the inheritance monies."

It appears from the language of the MSA that the parties anticipated that the Former Husband would receive his inheritance as a lump sum. However, the Former Husband's father actually created a revocable trust, put all of his considerable assets into the trust, and then—after the MSA was signed—created a spendthrift subtrust with the Former Husband as beneficiary that would be funded upon the father's death. Thus, rather than receiving a lump sum payment upon his father's death, the Former Husband began receiving periodic distributions from the subtrust. But the Former Husband refused to pay any portion of these distributed funds to the Former Wife.

The Former Wife subsequently filed a motion for enforcement, contending that the funds actually distributed to the Former Husband from the subtrust were subject to equitable distribution under the MSA as inheritance funds received. The Former Wife did <u>not</u> contend that she could invade the subtrust or require that any distributions be made—only that she was entitled to the percentage specified in the MSA of the distributions actually made to the Former Husband. In opposition, the Former Husband contended that the funds paid to him from the subtrust were not "inherited" and therefore were not contemplated by the language of the MSA. He based this argument entirely on case law dealing with statutory construction and the use of the term of "inherit" in the federal bankruptcy statutes.

The trial court held a hearing at which the Former Wife testified to the parties' intent concerning the distribution of the funds. The Former Husband did not attend the hearing or present any contrary evidence; instead, his attorney simply argued that the parties' intent was immaterial in light of the "plain language used." The trial court agreed with the Former Husband and denied the Former Wife's motion to enforce. The Former Wife then brought this timely appeal.

The issue here is one that must be resolved under the law pertaining to latent ambiguities rather than statutory construction. "A latent ambiguity arises when the language in a contract is clear and intelligible, but some extrinsic fact or extraneous evidence creates a need for interpretation or a choice between two or more possible meanings." <u>GE Fanuc Intelligent Platforms Embedded v. Brijot Imaging Sys., Inc.</u>, 51 So. 3d 1243, 1245 (Fla. 5th DCA 2011) (citing <u>Deni Assocs. of Fla, Inc. v. State Farm Fire & Cas. Ins. Co.</u>, 711 So. 2d 1135, 1139 (Fla. 1998)); <u>see also</u> <u>Luciano v. Franchino,</u>

730 So. 2d 410, 412 (Fla. 2d DCA 1999) ("A latent ambiguity . . . exists where a contract fails to specify the rights and duties of the parties in certain situations and extrinsic evidence is necessary for the interpretation or a choice between two possible meanings" (quoting Emergency Assocs. of Tampa, P.A. v. Sassano, 664 So. 2d 1000, 1002 (Fla. 2d DCA 1995))). "A latent ambiguity is thus brought to light when extraneous circumstances reveal 'an insufficiency in the contract not apparent from the face of the document.' " Mac-Gray Servs., Inc. v. Savannah Assocs. of Sarasota, LLC, 915 So. 2d 657, 659 (Fla. 2d DCA 2005) (quoting Hunt v. First Nat'l Bank, 381 So. 2d 1194, 1197 (Fla. 2d DCA 1980)). When a latent ambiguity exists, "the court must hear parol evidence to interpret the writing properly." Id. (quoting RX Sols., Inc. v. Express Pharmacy Servs., Inc., 746 So. 2d 475, 476 (Fla. 2d DCA 1999)); see also Emergency Assocs. of Tampa, P.A., 664 So. 2d at 1002-03. When considering that parol evidence, the question to be addressed is what the parties would have included in the contract had they anticipated the occurrence they overlooked. Hunt, 381 So. 2d at 1197 & n.3 (noting that "it isn't what the parties should have done that invites and sanctions judicial intervention, it's what they would have done had they thought to do it"). And the question of what the parties would have included is particularly important in an equitable setting, such as family law matters.

Here, the parties' MSA refers to "inheritance funds received" by the Former Husband. There is no dispute that the parties were referring to funds the Former Husband anticipated that he would receive when his parents died, and there is also no dispute that the parties did not know when they executed the MSA exactly how the funds would ultimately pass to the Former Husband. The extrinsic fact here is the

- 4 -

means by which the Former Husband received the funds. Rather than the father's estate being probated with a lump sum going to the Former Husband, the funds are being held in trust for the Former Husband. This extrinsic fact requires an analysis of the parties' intent as to the distribution of funds when they entered into the MSA, i.e., what would the parties have included in the MSA had they known that the Former Husband would not receive the funds from his parents outright but instead would receive them only in his capacity as the beneficiary of a spendthrift trust.

Unfortunately here, the trial court did not address this question. Instead, the court went on an extended foray into the law of statutory construction and examined cases dealing with how to interpret undefined terms in a statute—specifically the bankruptcy statutes. See, e.g., In re Ciano, 433 B.R. 431 (Bankr. N.D. Fla. 2010); In re Roth, 289 B.R. 161 (Bankr. D. Kan. 2003). This was plain error, however, because the goal of statutory construction is to determine what a legislative body intended when it drafted a statute of general applicability. See, e.g., Raymond James Fin. Servs., Inc. v. Phillips, 126 So. 3d 186, 190 (Fla. 2013) (noting that the "primary rule of statutory construction is 'to give effect to legislative intent' " (quoting Gomez v. Vill. of Pinecrest, 41 So. 3d 180, 185 (Fla. 2010))). That is a wholly different question from determining what private parties intended when they entered into a contract. Hence, the courts' determinations in Ciano and Roth concerning what Congress meant when it used the term "inherit" in the bankruptcy statutes does not inform—or even provide guidance—as to what the Former Husband and Former Wife meant or intended when they provided for the division of the anticipated "inherited funds" in their MSA. The trial court's reliance on the statutory construction analysis in Ciano and Roth when attempting to

resolve the issue of a latent ambiguity in a private contract was legally erroneous and requires us to reverse the order denying enforcement and remand for further proceedings utilizing the proper legal standard.

We recognize that normally the interpretation of a marital settlement agreement is a question of law which this court can decide as easily as the trial court. See Hobus v. Crandall, 972 So. 2d 867, 869 (Fla. 2d DCA 2007); Muir v. Muir, 925 So. 2d 356, 358 (Fla. 5th DCA 2006) ("Interpretation of a marital settlement agreement is a matter of law and places the appellate court on an equal footing with the trial court as interpreter of the written document.").  However, when a contract contains a latent ambiguity, the question of the parties' intent requires the taking of parol evidence— something which this court will not do.  See, e.g., Mac-Gray Servs., Inc., 915 So. 2d at 659-60 (noting that when there is a latent ambiguity the correct interpretation of the contact is an issue of fact rather than of law).  And while the Former Wife has asserted that she gave testimony at the evidentiary hearing while the Former Husband did not, no transcript of that hearing is available for this court to review.  Therefore, because we cannot make findings of fact concerning the parties' intent in the first instance and because the trial court made no factual findings on this issue, we remand this case for the trial court to reconsider its ruling in light of the correct legal standard.  If the trial court can do so based on the evidence presented at the earlier hearing, it may do so. Otherwise, further hearings may be needed.

Finally, for guidance to the trial court on remand, we note that when considering parol evidence concerning the parties' intent, a reasonable interpretation is preferred over one which is unreasonable, and an interpretation that leads to an absurd

result or that nullifies other provisions of the contract should be avoided. See Hunt, 381 So. 2d at 1197. Further, "[w]here one interpretation would lead to an agreement which is fair and reasonable, while another interpretation would result in an unfair and inequitable agreement, the former must be selected." Id. Given these general principles, any interpretation that would essentially negate a large portion of the parties' equitable distribution agreement should be rejected.

Reversed and remanded for further proceedings consistent with this opinion.

NORTHCUTT, J., and CASE, JAMES R., ASSOCIATE SENIOR JUDGE, Concur.