664 So.2d 1000 (1995)
EMERGENCY ASSOCIATES OF TAMPA, P.A., and Paul J. Arnold, D.O., Appellants,
v.
Joseph A. SASSANO, D.O., Appellee.
No. 94-03528.
District Court of Appeal of Florida, Second District.
October 11, 1995.
Rehearing Denied December 12, 1995.
*1001 Kevin H. O'Neill of Langford, Hill & Trybus, P.A., Tampa, for Appellants.
Thomas T. Steele of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for Appellee.
LAZZARA, Judge.
The appellants, Emergency Associates of Tampa, P.A., and Paul J. Arnold, D.O.,[1] appeal the trial court's orders finding them liable for breach of a noncompetition provision and enforcing that provision by entry of a permanent injunction in favor of appellee, Joseph A. Sassano, D.O. We conclude that the trial court erred in determining that the description of the geographical limitation in the noncompetition provision was ambiguous as a matter of law and in interpreting that language in a manner that differed from the written agreement. Accordingly, we reverse and remand with directions that the trial court enter judgment for the appellants.
The noncompetition provision was part of a written agreement prepared by Dr. Sassano's attorney for the sale of Dr. Arnold's medical practice to Dr. Sassano.[2] It stated as follows:
As further consideration for the transfer and assumption referenced above, Arnold agrees to refrain from engaging in the practice of general medicine, directly or indirectly, either on its own account or as a partner, joint venturer, contractor, stockholder or otherwise, anywhere within five (5) square miles of Sassano's existing operations for a period of five (5) years hence. The relative importance of this covenant is reflected in the express agreement of Sassano and Arnold to liquidated damages of $1,000 per day in the event of breach.[3]
(Emphasis added.)
The trial court found that the phrase "five (5) square miles" was ambiguous as a matter of law and allowed the introduction of parol evidence regarding the parties' negotiations prior to entering into the contract and their actions subsequent to its execution. After trial, the court entered an order determining that the true intention of the parties was that the noncompetition provision would encompass an area within a five-mile radius of Dr. Sassano's office. Finding that the appellants had violated the provision as modified, the trial court entered a permanent injunction prohibiting them from engaging in the practice of general medicine, directly or indirectly, *1002 anywhere within a five-mile radius of Dr. Sassano's office. It also reserved jurisdiction for a later determination of damages or, in the alternative, additional injunctive relief, as well as attorney's fees and costs. As we will explain, the trial court erred in concluding that the phrase "five (5) square miles" was ambiguous as a matter of law.
We begin our analysis by noting that although the interpretation of a covenant not to compete is a matter of law to be resolved by a trial court, an appellate court is nevertheless empowered to undertake an independent assessment of the covenant's meaning. Atkins v. Litsinger, 513 So.2d 178 (Fla. 2d DCA 1987). Thus, we are not restricted in our ability to reassess the meaning and effect of the parties' noncompetition agreement and to reach a conclusion which differs from that of the trial court. Angell v. Don Jones Ins. Agency, Inc., 620 So.2d 1012 (Fla. 2d DCA 1993); see also Florida Mining & Materials Corp. v. Standard Gypsum Corp., 550 So.2d 47, 49 (Fla. 2d DCA 1989) (appellate court on equal footing with trial court as interpreter of contract because interpretation based solely on written document). Furthermore, because a noncompetition agreement is in restraint of trade, it is in derogation of the common law and must be strictly construed against the alleged restraint. Riddick v. Suncoast Beauty College, Inc., 579 So.2d 855 (Fla. 2d DCA 1991). Based on our independent assessment, we conclude that the operative phrase of the agreement at issue  "five (5) square miles"  is not ambiguous as a matter of law.
It is a fundamental tenet of contract law that a "phrase in a contract is `ambiguous' only when it is of uncertain meaning, and may be fairly understood in more ways than one." Friedman v. Virginia Metal Prods. Corp., 56 So.2d 515, 517 (Fla. 1952). In the event of such an ambiguity, a trial court is authorized to admit parol evidence to explain the words used and how the contracting parties intended them to be interpreted. Joseph U. Moore, Inc. v. Howard, 534 So.2d 935 (Fla. 2d DCA 1988). However, before a trial court can consider such extrinsic evidence in interpreting a contract, the words used must be unclear such that an ambiguity exists on the face of the contract. Boat Town U.S.A., Inc. v. Mercury Marine Div. of Brunswick Corp., 364 So.2d 15 (Fla. 4th DCA 1978).
A further limitation on the receipt of parol evidence to explain ambiguous contractual language is that the ambiguity must be latent as opposed to patent. A patent ambiguity is one which appears on the face of a contract and arises from the use of defective, obscure, or insensible language. Ace Elec. Supply Co. v. Terra Nova Elec., Inc., 288 So.2d 544 (Fla. 1st DCA 1973). Florida courts have consistently declined to allow the introduction of extrinsic evidence to construe such an ambiguity because to do so would allow a trial court to rewrite a contract with respect to a matter the parties clearly contemplated when they drew their agreement. Hunt v. First Nat'l Bank, 381 So.2d 1194, 1196 n. 1 (Fla. 2d DCA 1980). The end result would be to give a trial court free reign to modify a contract by supplying information the contracting parties did not choose to include. Landis v. Mears, 329 So.2d 323 (Fla. 2d DCA 1976).
A latent ambiguity, on the other hand, stands on a different footing. Such an ambiguity exists "where a contract fails to specify the rights and duties of the parties in certain situations and extrinsic evidence is necessary for the interpretation or a choice between two possible meanings." Crown Management Corp. v. Goodman, 452 So.2d 49, 52 (Fla. 2d DCA 1984).[4] Thus, even though the contract language used may appear clear and unambiguous on its face, a trial court is nevertheless authorized to admit parol evidence to assist it in determining *1003 the parties' intent where the existence of some collateral or extraneous matter renders the contract's application uncertain. United States v. South Atlantic Prod. Credit Ass'n, 606 So.2d 691 (Fla. 1st DCA 1992).
In this case, we can discern no uncertainty of meaning in the phrase "five (5) square miles" used by the parties on the face of their agreement such that this phrase is latently ambiguous. A square mile, according to its ordinary meaning, is a defined unit of area. See Merriam-Webster's Third New International Dictionary 1399, 2214 (1986); see also People ex rel. Gray v. Village of Hawthorn Woods, 19 Ill.2d 316, 317, 167 N.E.2d 176, 177 (1960) ("A square mile like an acre is a unit of area.").
Significantly, the Florida legislature has recognized the legitimacy of using a square mile as a unit of measurement. Section 531.38, Florida Statutes (1993), provides in part that "[t]he definitions of basic units of weight and measure, the tables of weight and measure, and weight and measure equivalents as published by the National Institute of Standards and Technology are recognized and shall govern weighing and measuring equipment and transactions in the state." The general tables of units of measurement contained in the most recent publication of the National Institute of Standards and Technology clearly reflect that a square mile is an accepted unit of area measurement which is readily convertible to other accepted units of area measurement. See NIST, Handbook 44, U.S. Dep't of Commerce, at C-8-9, C-17 (1995 Ed.).
Finally, as the record clearly demonstrates, the parties encountered no difficulty in applying "within five (5) square miles" to the geographic facts of the case. At trial, they both used a map as a demonstrative aid to assist the trial court. Using Dr. Sassano's medical facility as the benchmark on the map, they were readily able to configure the geographical area subject to the "five (5) square miles" restriction in a color-shaded area and to pinpoint the location of appellants' medical facility in relation to this configuration. Indeed, Dr. Sassano agreed with the trial court's understanding of one aspect of a critical stipulation reached by the parties prior to the receipt of evidence "that Number 3 on the map [appellants' medical facility] does fall outside the five miles as construed by the [appellants]... ." (Emphasis added.) It is obvious, therefore, that each party clearly understood their rights and obligations as specified in the geographical restrictive portion of the noncompetition provision, and that there existed no collateral or extrinsic matter rendering its application uncertain.
When faced with an unambiguous contractual provision such as this one, a trial court cannot give it any other meaning beyond that expressed and must construe the provision in accord with its ordinary meaning. Institutional & Supermarket Equip., Inc. v. C & S Refrigeration, Inc., 609 So.2d 66 (Fla. 4th DCA 1992); see also Pottsburg Utils., Inc. v. Daugharty, 309 So.2d 199, 201 (Fla. 1st DCA 1975) ("Words in a contract are presumed to have been used with their ordinary and customary meaning."). Furthermore, "[i]n the absence of an ambiguity on the face of a contract, it is well settled that the actual language used in the contract is the best evidence of the intent of the parties, and the plain meaning of that language controls." Acceleration Nat'l Serv. Corp. v. Brickell Fin. Servs. Motor Club, Inc., 541 So.2d 738, 739 (Fla. 3d DCA), review denied, 548 So.2d 662 (Fla. 1989). Thus, when the terms of a voluntary contract are clear and unambiguous, as here, the contracting parties are bound by those terms, and a court is powerless to rewrite the contract to make it more reasonable or advantageous for one of the contracting parties. Medical Ctr. Health Plan v. Brick, 572 So.2d 548 (Fla. 1st DCA 1990).
Accordingly, because the term square mile has a commonly understood and accepted meaning, we conclude that the trial court erred in determining that the phrase "five (5) square miles" was ambiguous as a matter of law. Thus, we also conclude that the trial court erred in receiving extrinsic evidence to vary the terms of the parties' contract by interpreting that phrase to mean within a five-mile radius.
We recognize that a geographical restriction in a noncompetition agreement *1004 based on square mileage may be unique to the parlance of such agreements. Indeed, we have been unable to find any reported case in which a court was confronted with construing a noncompetition agreement based on such a unit of area measurement. In our view, however, the uniqueness of the term "five (5) square miles" does not make it ambiguous as a matter of law because "[i]t is a fundamental principle of our jurisprudence that parties sui juris may make any contract they desire so long as it does not violate any law or public policy of the state." Baxter v. Royal Indem. Co., 285 So.2d 652, 655 (Fla. 1st DCA 1973), cert. discharged, 317 So.2d 725 (Fla. 1975). Accord Foster v. Jones, 349 So.2d 795 (Fla. 2d DCA 1977). Moreover, even if we were to construe this phrase as defective, obscure, or insensible within the context of a noncompetition agreement, it would only constitute a patent ambiguity. As discussed, however, extrinsic evidence is inadmissible to construe such an ambiguity.
We also recognize that our holding may be contrary to what Dr. Sassano thought he was bargaining for regarding the geographical restriction that would govern his post-contractual relationship with Dr. Arnold. However, "[t]he parties selected the language of the contract. Finding it to be clear and unambiguous, we have no right  nor did the lower court  to give it a meaning other than that expressed in it. To hold otherwise would be to do violence to the most fundamental principle of contracts." Hamilton Constr. Co. v. Board of Pub. Instruction, 65 So.2d 729, 731 (Fla. 1953).
We, therefore, reverse the trial court's orders and, in light of our holding and the parties' stipulation at trial, direct that on remand it enter judgment for the appellants.
Reversed and remanded with directions.
DANAHY, A.C.J., and WHATLEY, J., concur.
NOTES
[1] Dr. Arnold is the sole owner of Emergency Associates, which is a professional association engaged in the business of providing general medical services in Hillsborough County.
[2] We note that Dr. Sassano's appellate counsel, who was also trial counsel, did not draft this agreement.
[3] This provision initially stated that competition would not take place "within eight (8) square miles." When executing the agreement, however, the parties agreed to reduce the geographical limitation to "within five (5) square miles." They effectuated this agreement by striking through the "(8)" and writing in "5." They then acknowledged this contractual modification by initialling and dating it. Thus, we presume that the parties exercised the duty imposed by law "to learn and know the contents of an agreement before signing it." Onderko v. Advanced Auto Ins., 477 So.2d 1026, 1028 (Fla. 2d DCA 1985).
[4] We noted in Crown the existence of some dissatisfaction among the courts with the latent ambiguity-patent ambiguity dichotomy and agreed with the comments of Royal Continental Hotels, Inc. v. Broward Vending, Inc., 404 So.2d 782, 784 (Fla. 4th DCA 1981), that parol evidence should be admissible "irrespective of any technical classification of the type of ambiguity present." 452 So.2d at 52. However, we continued to "adhere to the distinction inasmuch as the rule is still in existence." Id. (citing First Guar. Corp. v. Palmer Bank & Trust Co., 405 So.2d 186 (Fla. 2d DCA 1981)).