795 So.2d 1121 (2001)
Woodrow WILSON, etc., et al., Appellants,
v.
SOUTHERN REPAIR SERVICES, INC., Appellee.
No. 5D00-3773.
District Court of Appeal of Florida, Fifth District.
October 5, 2001.
*1122 Gary C. Simons and Robert E. Seymour of Savage, Krim, Simons & Jones, LLC, Ocala, for Appellants.
John F. Welch of Welch & Welch, Ocala, for Appellee.
PLEUS, J.
This case is a sad example of the problems caused by a poorly-worded non-competition clause in a contract for sale and purchase of a business.
The Wilsons, who were the sellers of an auto parts business, appeal a final judgment based on a jury verdict in favor of Southern Repair, the buyer. The final judgment also enjoined the Wilsons from further violations of the non-competition agreement.
The Wilsons contend the non-compete clause meant they could not engage in the salvage or used truck parts business within 100 miles of Ocala for five years. The buyer contends it meant the Wilsons also could not conduct any sort of competitive business involving the purchase and sale of vehicles.
The operative portions of the non-competition clause read as follows:
The SELLER agrees that for a period of five (5) years from and after the Closing Date, other than in connection with services performed on behalf of or for the benefit of BUYER, the SELLER will not, directly or indirectly, for itself or for any other person, firm, corporation, partnership, association or other entity, contact or solicit any customers with whom the SELLER had personal contact or to whom the SELLER provided equipment or services to at the BUSINESS. While the prohibition against solicitation shall prohibit, without limitation, any advertising that is intended to be distributed by any method within the one hundred (100) *1123 mile radius described below, nothing shall preclude advertising intended to be distributed to the general public in areas outside of such radius. Nor shall the SELLER, directly or indirectly, for themselves, or for any other person, firm, corporation, partnership, association or other entity, provide services directly or indirectly either as an employee of a salvage yard or a "used" automotive parts (salvage) company, or otherwise, without BUYER's prior written consent, at a site located within one hundred (100) miles of the Business or any office at which WILSON provides automotive retail services to customers on behalf of BUYER or its affiliates during such five (5) year period. IMPORTANT NOTE: The foregoing restrictions shall not in anyway restrict the WILSONS from utilizing their Automotive Retailer License to buy and sell new or used vehicles for or on behalf of local retail dealers so long as the WILSONS are not purchasing damaged used vehicles ("salvage vehicles") and restoring the vehicles to saleable condition as is normally undertaken by the SELLER. In utilizing this exemption, the WILSONS agree not to use the Corporate Seller's name or any name affiliated with the BUYER or the Business. However, nothing in the foregoing exemption is intended to entitle the WILSONS or SELLER to engage in export sales in competition with the BUYER.
Paragraph 15 (d) of the Contract is entitled "Damages" and reads:
If the SELLING PARTIES, or any of their shareholders, directors or officers engage in a business in competition with the business being sold pursuant to this Agreement in violation of this covenant, an amount equal to one-half (½) of the gross sales receipts received directly by SELLER while the violation continues will be due BUYER as liquidated damages, as an exact amount of damages is too difficult to ascertain.
Before trial, the Wilsons filed a motion in limine requesting that the trial court interpret the non-compete clause and determine what was prohibited by its language. Additionally, the motion asked that the court exclude evidence of activities, such as the sale of vehicles, that did not violate the non-compete clause. The motion in limine was denied, and the trial court refused to interpret the contract.
After a week-long trial, the case went to the jury on the count asking for an accounting, resulting in a verdict of $153,053 for violations of the non-compete agreement. The final judgment added $35,700 in attorney's fees, offset that amount against the amount due on a purchase money note and mortgage executed by the buyer, and enjoined the Wilsons "from any further violations of the non-compete agreement." In short, the buyer hit a home run.
The Wilsons argue that the interpretation of a written contract that is unambiguous is a matter of law that should be decided by the trial court. We agree, reverse and remand for a new trial.
The interpretation of a written contract that is clear and unambiguous should be done by the court, not by the jury, because the meaning of the contract is a matter of law. DEC Electric, Inc. v. Raphael Const. Corp., 558 So.2d 427 (Fla. 1990); Smith v. State Farm Mut. Auto. Ins. Co., 231 So.2d 193 (Fla.1970); City of Leesburg v. Hall, 96 Fla. 186, 117 So. 840 (1928); Bryan v. Braun Cadillac, Inc., 599 So.2d 1050 (Fla. 5th DCA 1992). A contract which operates in restraint of trade, as this one does, should be strictly construed. Riddick v. Suncoast Beauty College, Inc., 579 So.2d 855 (Fla. 2d DCA 1991).
*1124 This court has the power to determine the meaning of the non-compete clause. In Emergency Associates of Tampa, P.A., v. Sassano, 664 So.2d 1000 (Fla. 2d DCA 1995), the court noted that "although the interpretation of a covenant not to compete is a matter of law to be resolved by a trial court, an appellate court is nevertheless empowered to undertake an independent assessment of the covenant's meaning." Id. at 1002. The court went on to say that it was not restricted in its ability to reassess the meaning and effect of the parties' non-competition agreement and to reach a different conclusion from that of the trial court. Id. This view has been shared by other appellate courts. See, e.g., Weintraub v. Roth, 617 So.2d 1158, 1159-60 (Fla. 4th DCA 1993) ("While the construction of the covenant not to compete is a matter of law for the trial court, the appellate court may assess the covenant's meaning."); Riddick, 579 So.2d at 856 (An appellate court is empowered to assess a covenant's meaning).
Since the meaning of the non-competition clause in the contract is central to this case, and because the trial court failed to interpret that covenant, this court now is obliged to interpret the agreement.
The non-compete agreement prohibits contact with or solicitation of customers with whom the sellers had personal contact or to whom the sellers provided equipment or services while owning the salvage yard. It prohibited the Wilsons from advertising within 100 miles. It prohibited the Wilsons from working in another salvage yard or for another salvage company. It prohibits the Wilsons from engaging in export sales.
What it does not prohibit is the Wilsons buying or selling new or used vehicles. A new trial is required to determine if the Wilsons violated the restrictions of the agreement, as explained herein.
If the jury should find that the defendants violated any of those prohibitions, then the measure of damages, according to the terms of the contract, should be one-half of the gross sales receipts received while the violation continues. If the violation consists of the isolated sales of parts, the gross receipts utilized should be limited to those isolated sales. If the Wilsons engaged in a regular course of conduct in violation of the agreement, then the measure of damages is 50% of the gross receipts received during the duration of the continuing violation.[1]
On remand, the language in the injunction needs to be modified so as to exclude the sales of new or used vehicles.
REVERSED AND REMANDED FOR NEW TRIAL.
SAWAYA and PALMER, JJ., concur.
NOTES
[1] Receipts during any period of continuing violation must be limited to actual sales receipts. The jury cannot rely solely on the Wilsons' bank records as evidence of sales, in light of unrefutted testimony that money from sources other than sales were deposited into the Wilsons' corporate account.