Jose E. HERRERA CEDENO,
Plaintiff,

v.

MORGAN STANLEY SMITH
BARNEY, LLC, et al.,
Defendants.

Case No. 1:15-cv-24244-UU

United States District Court,
S.D. Florida.

Signed January 5, 2016

Filed 01/06/2016 .

Joseph Stanley Shook, Coral Gables, FL, for Plaintiff.

Peter W. Homer, Gregory J. Trask, Homer Bonner Jacobs, P.A., Miami, FL, Lauren Whetstone, Tracy Lynn Gerber, Greenberg Traurig, West Palm Beach, FL, for Defendant.

## ORDER

Ursula Ungaro, UNITED STATES DISTRICT JUDGE

THIS CAUSE comes before the Court upon Defendants Morgan Stanley Smith

Barney LLC's and Citigroup Global Markets Inc.'s Motion to Compel Arbitration and for Stay. D.E. 5.

THE COURT has considered the Motion, the pertinent portions of the record and is otherwise fully advised in the premises.

## BACKGROUND

On October 6, 2015, Plaintiff filed his Complaint against Defendants in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. D.E. 1-1. In the Complaint, Plaintiff asserted state law claims for negligence, fraud by inducement, fraud by omission, constructive fraud, and breach of fiduciary duty. *Id.* Plaintiff's claims stem from his allegation that "[u]nauthorized disbursements from Plaintiff, Dr. Herrera's, account [with Defendants] were made by forged checks in the amount of US, $80,301.60." *Id.* ¶ 15. On November 13, 2015, Defendants timely removed this case to the United States District Court for the Southern District of Florida pursuant to this Court's original jurisdiction under 28 U.S.C. § 1332(a). D.E. 1. On November 19, 2015, Defendants filed their Motion to Compel Arbitration, arguing that Plaintiff should be compelled to submit his claims against Defendants to arbitration under the terms of a written agreement entered into between Plaintiff and Defendants on May 9, 2008. D.E. 5-1. In addition, Defendants contend that because the entire action should be referred to arbitration, a stay of the action is mandatory under Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3. *Id.*

It is undisputed that on May 9, 2008, Plaintiff signed the second page of the International Account Application ("Application") and Client Agreement ("Client Agreement"). D.E. 5-1; D.E. 8. Between the Application and Client Agreement, there were five total pages. D.E. 5-1. Immediately above the signature line where Plaintiff affixed his signature, the Acceptance of Terms and Conditions of Agreements read as follows:

> In consideration of Citigroup Globals Markets Inc. ("you") accepting an account for me/us, I/we (I") acknowledge that I have read, understand and agree to the terms of the attached Client Agreement in sections 1 through 11 ... *I acknowledge that I have received a copy of the Client Agreement which contains a pre-dispute arbitration clause at page 4, section 6.*

International Account Application and Client Agreement. D.E. 5-1 (emphasis added). Furthermore, the Client Agreement contained the following pre-dispute arbitration clauses:

**6. Arbitration**

This agreement contains a predispute arbitration claim. By signing an arbitration agreement the parties agree as follows:

- All parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.

- Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.

- The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in the arbitration than in court proceedings.

- The arbitrators do not have to explain the reason(s) for their award.

- The panel of arbitrators will typically include a minority of arbitrators who

were or are affiliated with the securities industry.

- The rules of some arbitration forums may impose time limits for binding a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.

- The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this agreement.

I agree that all claims or controversies, whether such claims or controversies arose prior, on or subsequent to the date hereof, between me and SB [Smith Barney] and/or any of its present or former officers, directors, or employees concerning or arising from (i) any account maintained by me with SB individually or jointly with others in any capacity; (ii) any transaction involving SB or any predecessor firms by merger, acquisition or other business combination and me, whether or not such transaction occurred in such account or accounts, or (iii) the construction, performance or breach of this or any other agreement between us, any duty arising from the business of SB or otherwise, shall be determined by arbitration before, and only before, any self-regulatory organization or exchange of which SB is a member.

\* \* \*

No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class until: (i) the class certification is denied; (ii) the class is decertified; or (iii) the customer is excluded from the class by the court.

7. The provisions of this Agreement shall be continuous, shall cover individually and collectively all accounts which I may open or reopen with SB, and shall inure to the benefit of SB's present organization, and any successor organization or assigns; and shall be binding upon my heirs, executors, administrators, assigns or successors in interest. Should any term or provision of this Agreement be deemed or held to be invalid or unenforceable, the remaining terms shall continue in full force and effect. Except for statutes of limitation applicable to claims, this Agreement and all the terms herein shall be governed and construed in accordance with the laws of the State of New York without giving effect to principles of conflicts of laws, the statute of limitations applicable to any claims shall be that which would be applied by the courts of the state in which I reside or if I do not reside in the United States, the statute of limitations shall be that which would be applied by the courts in the state where the SB office servicing my account(s) is located.

International Account Application and Client Agreement, 4 ¶ 6–7 (D.E.5–1).

In moving to compel arbitration, Defendants argue that arbitration is appropriate because Plaintiff expressly and unambiguously agreed to the terms of the Client Agreement, which contained a pre-dispute arbitration clause. D.E. 5. Defendants argue that the Agreement is valid, irrevocable, and enforceable under the requirements of the FAA. *Id.* Defendants filed the Declaration of Dalia F. Botero ("Botero"), who is a Senior Complex Risk Officer employed by Defendant, Morgan Stanley Smith Barney LLC. D.E. 5–1. In her Declaration, Botero attests to the authen-

ticity of the International Account Application and Client Agreement, signed by Plaintiff and dated May 9, 2008. *Id.* ¶ 5. In addition, she attests, "Citi/Smith Barney's established and standard business practice was to provide the entire 5–page Application and Agreement to customers at the time an account was applied for and opened." *Id.* ¶ 9. Botero also stated, "[t]he documents attached ... are true and correct copies of documents stored in Citi/Smith Barney's and MSSB's business records, and were kept and maintained in the ordinary course of Citi/Smith Barney's and MSSB's businesses as part of Citi/Smith Barney's and MSSB's regular business practices." *Id.* ¶ 13.

In opposing Defendants' Motion, Plaintiff argues that at the time he signed the Application, he did not receive the Client Agreement containing the pre-dispute arbitration clause. D.E. 8. In addition, Plaintiff asserts: (1) there was no mutual assent to the essential and material terms of the arbitration provision; (2) the Court should consider parol evidence to determine the intent of the parties at the time of entering into the Client Agreement; (3) the fees associated with arbitration are unconscionable and render the enforcement of the arbitration provision unenforceable; and (4) the Financial Industry Regulatory Authority ("FINRA") is not the appropriate forum for arbitration.[1]

---

1. Plaintiff's Response to Defendants' Motion to Compel contains twenty (20) pages of superfluous and redundant argument. Plaintiff relies upon both New York law and Florida law, and many of the cited cases do not stand for the propositions that Plaintiff represents in his briefing. Because of the disjointed nature of Plaintiff's Response, the Court will address the relevant arguments as they pertain to the Court's analysis under the FAA; however, the alleged "unconscionable" nature of the fees associated with arbitration is of no legal consequence in determining

## LEGAL STANDARD

Federal policy favors arbitration over litigation. *Seaboard Coast Line R.R. Co. v. Trailer Train Co.*, 690 F.2d 1343, 1348 (11th Cir.1982). Claims are subject to arbitration where they fall within the scope of a valid and enforceable arbitration agreement. *See, e.g., Benoay v. Prudential–Bache Sec., Inc.*, 805 F.2d 1437, 1440 (11th Cir.1986). Pursuant to the Federal Arbitration Act, a written arbitration provision in a "contract evidencing a transaction involving commerce" is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a party is "aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement," it may petition a federal district court "for an order directing that such arbitration proceed in the manner provided for in [the] agreement." 9 U.S.C. § 4. When addressing a § 4 motion, the district court is required to determine whether there is a binding agreement to arbitrate and, if so, whether the nonmovant has breached its obligation to arbitrate under that agreement. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 n. 27, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (citing 9 U.S.C. §§ 4, 6)).

"The party opposing a motion to compel arbitration or to stay litigation pending arbitration has the affirmative

---

whether arbitration is appropriate, and therefore, this argument will not be considered. Furthermore, the Court will not consider whether FINRA is the appropriate forum for the arbitration. Plaintiff submitted no evidence to contradict Defendants' undisputed contention that he was notified of Defendants' intention to pursue arbitration and failed to elect a forum as required on page 4 of the Client Agreement. D.E. 9–4. Because the Court finds the Application and the Client Agreement are valid and enforceable, the terms of these documents will control.

duty of coming forward by way of affidavit or allegation of fact to show cause why the court should not compel arbitration." *Sims v. Clarendon Nat'l Ins. Co.,* 336 F.Supp.2d 1311, 1314 (S.D.Fla.2004). "This burden is not unlike that of a party seeking summary judgment"; "the party opposing arbitration should identify those portions of the pleadings, depositions, answers to interrogatories, and affidavits which support its contention." *Id.; see also Bertram v. Beneficial Consumer Discount Co.,* 286 F.Supp.2d 453, 456 (M.D.Pa. 2003) (in the context of a motion to compel arbitration or to stay litigation pending arbitration, "the court may consider the pleadings, documents of uncontested validity, and affidavits or depositions submitted by either party").

■ The FAA evinces a "liberal federal policy favoring arbitration agreements." *Hill v. Rent–A–Center, Inc.,* 398 F.3d 1286, 1288 (11th Cir.2005) (quoting *Moses,* 460 U.S. at 24, 103 S.Ct. 927)); *see also Picard v. Credit Solutions, Inc.,* 564 F.3d 1249, 1253 (11th Cir.2009) ("The FAA creates a strong federal policy in favor of arbitration."). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses,* 460 U.S. at 24–25, 103 S.Ct. 927. Accordingly, courts should "rigorously enforce" arbitration agreements. *Klay v. All Defendants,* 389 F.3d 1191, 1200 (11th Cir. 2004). Furthermore, the FAA provides that "upon any issue referable to arbitration under an agreement in writing for such arbitration," and "upon being satis-

fied that the issue involved in such suit or proceeding is referable to arbitration under such agreement," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

## ANALYSIS

In this case, it is undisputed that: (1) Plaintiff signed the Application; (2) the Application incorporated the terms of the Client Agreement; and (3) the Client Agreement contained a pre-dispute arbitration provision. D.E. 5–1, 2–4; D.E. 8. Using the guidelines established by the Supreme Court and the Eleventh Circuit, the Court will address the following issues: (1) whether the Client Agreement is a written agreement invoking interstate commerce in order to be enforceable under the FAA pursuant to 9 U.S.C. § 2; (2) whether the Agreement is unenforceable due to a lack of mutual assent; and (3) whether Plaintiff's claims fall within the scope of the arbitration provision. The Court will address each in turn.

### 1. Enforceability under Section 2 of the Federal Arbitration Act

■ To enforce an arbitration agreement under the FAA, the Court must conduct a two-pronged inquiry: first, the Court must determine whether there was an arbitration agreement in writing; and second, if so, the Court must ascertain whether the agreement is a part of a transaction involving interstate commerce.[2]

---

**2.** The term "commerce" as used in Section 2 of the FAA implicates interstate commerce. *See* 9 U.S.C. § 1 (" '[C]ommerce', as herein defined, means commerce among the several States[.]"). The Supreme Court has interpreted the phrase "involving commerce" broadly. *See Allied–Bruce Terminix Cos., Inc. v. Dobson,* 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). "[I]nvolving commerce

requires only 'that the transaction' in fact 'involv[e] interstate commerce, even if the parties did not contemplate an interstate commerce connection." *Id.* at 281, 115 S.Ct. 834. "Where agreements to arbitrate are found in written agreements pertaining to securities accounts ... such agreements are *per se* evidence of transactions in interstate commerce and are accordingly subject to the Federal

Defendants bear the burden of proving both prongs. *Univ. of S. Ala. Found. v. Walley,* No. 99–D–1287, 2001 WL 237309, at *3 (M.D.Ala. Jan. 30, 2001); *see also Williams v. Eddie Acardi Motor Co.,* No. 07–cv–782, 2008 WL 686222, at *7 (M.D.Fla. Mar. 10, 2008) ("Defendant's burden is to establish there is a valid written agreement to arbitrate.").

Under the FAA, "parties cannot be forced to submit to arbitration if they have not agreed to do so." *Chastain v. Robinson–Humphrey Co.,* 957 F.2d 851, 854 (11th Cir.1992). Thus, "the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). "Under normal circumstances, an arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration." *Id.* "Under such circumstances, the parties have at least presumptively agreed to arbitrate any disputes, including those disputes about the validity of the contract in general." *Id.*

In this case, Plaintiff has not contested the authenticity of his signature on the document. *See e.g., Scone Invs., L.P. v. Am. Third Mkt. Corp.,* 992 F.Supp. 378, 381 (S.D.N.Y.1998) (finding that the movants had "satisfied their initial burden of demonstrating a written agreement obligating both plaintiffs to arbitrate by producing a copy of the customer agreement which includes an arbitration clause and which was purportedly signed by [the other party]"). Because it is undisputed that

Plaintiff signed the Application and Client Agreement, the burden then shifts to Plaintiff to show that no valid contract existed and to meet that burden [ ]he must "unequivocally deny that an agreement to arbitrate was reached and must offer some evidence to substantiate the denial." *Magnolia Capital Advisors v. Bear Stearns & Co.,* 272 Fed.Appx. 782, 785 (11th Cir.2008) (citing *Chastain,* 957 F.2d at 854)).

In opposing arbitration, Plaintiff simply contends he did not receive the Client Agreement containing the pre-dispute arbitration clause. Plaintiff did not file any declaration and/or offer any evidence in support of his position. Similar to *Sultanem v. Bright House Networks, LLC,* No. 8:12–cv–1739–T–24 TBM, 2012 WL 4711963 (M.D.Fla. Oct. 3, 2012), the Court finds that Plaintiff's mere denial that he did not receive the Agreement "is not sufficient evidence, on its own" given that Defendants offered undisputed evidence Plaintiff signed and acknowledged that he "received, read, understood, and agreed" to the terms of the Client Agreement. Under Florida law, "a person is deemed to have read a contract that they have signed." *Id.* (citing *Dorward v. Macy's, Inc.,* No. 2:10–cv–669–FtM–29DNF, 2011 WL 2893118, at *6 (M.D.Fla. July 20, 2011)). As such, Plaintiff's argument that he did not receive the Agreement, on its own, is not relevant to this Court's consideration in determining whether the Agreement is enforceable under the FAA. *See Honig v. Comcast of Ga., I, LLC,* 537 F.Supp.2d 1277, 1283 (N.D.Ga. 2008) (considering the plaintiff's signature on a work order acknowledging receipt of the subscriber agreement containing the arbitration provision as evidence that she

Arbitration Act." *Johannsen v. Morgan Stanley Credit Corp.,* No. 2:11–cv–01516, 2012 WL 90408, at *3 (E.D.Cal. Jan. 11, 2012).

did receive it). Accordingly, the Court finds Defendants have met their burden in establishing that the Application and the Client Agreement are enforceable under Section 2 of the FAA.

### 2. Revocability of the Client Agreement

■■■■ Courts generally should apply state law principles governing formation of contracts. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Although the FAA governs the applicability of arbitration agreements, state law governs issues "concerning the validity, revocability, and enforceability of contracts generally." *Bhim v. Rent–A–Center, Inc.,* 655 F.Supp.2d 1307, 1311 (S.D.Fla.2009) (citing *Perry v. Thomas,* 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)). Therefore, defenses such as fraud, unconscionability, and duress are governed by state law. *See Dale v. Comcast,* 498 F.3d 1216, 1219 (11th Cir.2007).

Plaintiff argues that the arbitration provision is unenforceable because it lacks mutual assent. Specifically, Plaintiff asserts the Application does not sufficiently describe the terms and procedures of the pre-dispute arbitration agreement in the Client Agreement and relies upon *Spicer v. Tenet Fla. Physician Servs., LLC,* 149 So.3d 163 (Fla. 4th DCA 2014) to support his position. In *Spicer,* the court found the arbitration agreement was invalid because the employment agreement did not incorporate the arbitration provision, which was contained in a separate document. *Id.* at 167. Unlike that case, however, in this case, the Application expressly incorporates the pre-dispute arbitration clause contained within the Client Agreement. Moreover, the language of the Application sufficiently describes the pre-dispute arbitration clause by identifying the paragraph and page number where the clause was located in the Client Agreement. Plaintiff has submitted no evidence whatsoever that he did not receive the Client Agreement; therefore, the evidence remains undisputed that Plaintiff signed the Agreement and was aware of the Client Agreement at the time he affixed his signature.

■■■■ The Court also rejects Plaintiff's contention that the terms "may be brought in Court," "generally," "typically," "pre-dispute arbitration," and "arbitration" are ambiguous and invalidate the Client Agreement. Plaintiff provides no support for this argument other than blanket allegations that these terms are ambiguous. "[I]t is a fundamental tenet of contract law that a phrase in a contract is 'ambiguous' only when it is of uncertain meaning, and may be fairly understood in more ways than one." *Solymar Invest., Ltd. v. Banco Santander S.A.,* 672 F.3d 981, 991 (11th Cir.2012) (citing *Emergency Assocs. of Tampa, P.A. v. Sassano,* 664 So.2d 1000, 1002 (Fla. 2d DCA 1995)). "[I]n the absence of such ambiguity, parol evidence is inappropriate." *Id.* (citing *Fla. Bar v. Frederick,* 756 So.2d 79 (Fla.2000)). "Thus, where a contract is facially complete and contains no ambiguous terms, Florida law requires those contracts be enforced in accordance with their terms." *Id.* The Court agrees with Defendants that the terms of the Application and Client Agreement where Plaintiff acknowledges that he received, read, understood, and agreed to the terms of the Client Agreement are clear, and therefore, preclude Plaintiff's argument that the terms contained within the document are vague and ambiguous. Accordingly, the Court does not find there to be a viable basis upon which the Client Agreement should be invalidated.

### 3. Scope of Plaintiff's Claims under Pre–Dispute Arbitration Agreement

 As a matter of contract law, the scope of an arbitration agreement depends on the intent of the parties. *Seaboard Coast Line R.R. v. Trailer Train Co.*, 690 F.2d 1343, 1352 (11th Cir.1982). "[W]here, as here, parties concede that they have agreed to arbitrate *some* matters pursuant to an arbitration clause, the law's permissive policies in respect to arbitration counsel that any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *Perera v. H & R Block E. Enters., Inc.*, 914 F.Supp.2d 1284, 1288 (S.D.Fla.2012) (citing *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 130 S.Ct. 2847, 2857, 177 L.Ed.2d 567 (2010)). The presumption of arbitrability is particularly applicable where the arbitration clause is broad. *AT & T Techs., Inc. v. Commc'ns Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). "[O]nly the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Perera*, 914 F.Supp.2d at 1288. The Eleventh Circuit has held that such evidence will be found only if the parties "clearly express their intent to exclude categories of claims from their arbitration agreement." *Paladino v. Avnet Comp. Techs., Inc.*, 134 F.3d 1057, 1057 (11th Cir.1998).

In this case, the plain language of the arbitration clause is unambiguously broad. Plaintiff agreed to arbitrate "all claims or controversies" between Plaintiff and Defendant "concerning or arising" from Plaintiff's accounts maintained by Defendants. In Plaintiff's Complaint, Plaintiff alleges that Defendants permitted "unauthorized disbursements" and the payment of "nine forged checks" in the amount of $80,301.60 from Plaintiff's account with Defendants. D.E. 1–1 ¶ 15.

There is no question that Plaintiff's claims are covered by the pre-dispute arbitration clause, and therefore, the Court finds that it must compel arbitration on all of Plaintiff's claims. Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendants Morgan Stanley Smith Barney LLC's and Citigroup Global Markets Inc.'s Motion to Compel Arbitration and for Stay is GRANTED. It is further

ORDERED AND ADJUDGED that this case is CLOSED for administrative purposes.

DONE AND ORDERED in Chambers at Miami, Florida, this 5th day of January, 2016.