DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____


KIMBERLY FRINZI; BOLLIGER LAW GROUP, PLLC; and
ALDO BOLLIGER ESQ.,

Petitioners,

v.

THOMAS C. TOLLI, M.D., P.A. d/b/a THOMAS TOLLI, M.D.,

Respondent.


No. 2D2023-2008

_____


June 7, 2024

Petition for Writ of Certiorari to the Circuit Court for Pinellas County;
Cynthia J. Newton, Judge.

Aldo Bolliger of Bolliger Law Group, PLLC, St. Petersburg, for Petitioners.

Brad Salter of Salter, Healy, LLC, St. Petersburg, for Respondent.


LaROSE, Judge.

        Attorney Aldo Bolliger petitions for a writ of certiorari.[1]  *See* Fla. R.

App. P. 9.030(b)(2)(A).  He asks us to quash the trial court's order

_____

        [1] The dispute below involves Attorney Bolliger's alleged breach of a
contract concerning disbursement of settlement funds to satisfy his
personal injury's client's medical bills.  Although there are several
petitioners, their roles in this original action are nominal; the case boils

denying his summary judgment motion.  He alleges that Dr. Thomas Tolli, his personal injury client's treating physician, failed to join indispensable parties in a breach of contract lawsuit against Attorney Bolliger and his client, Kimberly Frinzi.  The lawsuit is premised upon a contract requiring Attorney Bolliger to refrain from distributing any settlement proceeds to Ms. Frinzi until he paid Dr. Tolli's medical bills.  Because Attorney Bolliger fails to establish irreparable harm, we dismiss the petition.

## Background

Attorney Bolliger represented Ms. Frinzi in a personal injury lawsuit stemming from a car accident.  Ms. Frinzi did not have health insurance.  She received medical treatment from many providers, including Dr. Tolli.

Ms. Frinzi and Attorney Bolliger separately executed a "Letter of Protection" (LOP) in favor of Dr. Tolli.  Attorney Bolliger "agree[d] to withhold monies from settlement . . . in [his] client's case in an amount sufficient to cover any unpayed [sic] balances for services rendered by [Dr. Tolli]."  He also agreed to satisfy Dr. Tolli's bill "prior to disbursing any proceeds to [Ms. Frinzi] personally."

Ms. Frinzi settled her case at mediation.  Unfortunately, the settlement amount was less than her outstanding medical bills.  Because of the relatively meager financial outcome, Attorney Bolliger wrote to Dr. Tolli and Ms. Frinzi's other medical care providers proposing that "the only fair resolution is that we all take a pro rata share of the recovery

down to Attorney Bolliger and a physician who treated his client. Consequently, our opinion addresses Attorney Bolliger's pursuit of certiorari relief, albeit alongside the other named petitioners.

2

based upon our outstanding balances." Attorney Bolliger presented a closing statement showing the proposed reduced pro rata share for Attorney Bolliger, Dr. Tolli, and the other medical care providers. Dr. Tolli agreed to Attorney Bolliger's proposal. He expected to receive $21,492.66 for his medical services.

Over a year later, Attorney Bolliger filed a "Complaint for Interpleader and/or for Equitable Distribution" on behalf of Ms. Frinzi against her medical care providers. Allegedly, two of Ms. Frinzi's medical care providers did not agree to accept reduced payments. Consequently, he "file[d] this action so that the [trial court] may make a determination as to what entities are protected via [the LOP] and therefore should share in a pro-rata distribution." Count I of the complaint "request[ed] that an order of interpleader be entered, a judgment that [Ms. Frinzi]'s costs and attorneys fees be awarded to [Ms. Frinzi] out of the sum held in trust and . . . [Ms. Frinzi] be dismissed allowing [medical care providers] to proceed with this action." Count II of the complaint asserted a claim for equitable distribution, a "judicial determination as to the proper pro rata share distribution of the settlement funds so that [Attorney Bolliger] may distribute the remaining funds."

Several medical care providers, including Dr. Tolli, failed to respond to the complaint. Dr. Tolli reported that he "didn't take any action because [he] had no defenses to submit because . . . [he] had a valid [LOP] and [he] was going to be paid for [his] service." Attorney Bolliger obtained a clerk's default against the nonresponding medical care providers. *See* Fla. R. Civ. P. 1.500(a).

Attorney Bolliger then submitted correspondence and a proposed order to the trial court. He advised that the nondefaulted medical care

3

provider parties agreed with the distribution scheme contained in the attached Order Approving Agreed Distribution.[2] The proposed order did not distribute any funds to Dr. Tolli. Without a hearing, the trial court entered the Order Approving Agreed Distribution. Shortly thereafter, Attorney Bolliger voluntarily dismissed the Complaint for Interpleader and/or for Equitable Distribution and issued a check to Ms. Frinzi for $60,630.24.[3] The "Order Approving Agreed Distribution" was not provided to the defaulted parties. Dr. Tolli continued to treat Ms. Frinzi. He assumed that payment delays were due to court closures during the Covid-19 pandemic. He did, however, make multiple inquiries of Attorney Bolliger about Ms. Frinzi's case. Dr. Tolli reported being stonewalled; Attorney Bolliger repeatedly claimed, "We're waiting on the court." Finally, Dr. Tolli asked Ms. Frinzi about his unpaid bills. She responded that "Aldo told me everybody was paid in full." Alas, the veil was lifted.

Dr. Tolli sued Attorney Bolliger and Ms. Frinzi for breach of contract. He alleged that despite the terms of the LOP, Attorney Bolliger "disbursed all settlement funds received through the lawsuit . . . which were being held in his trust account, without making any payment to [Dr. Tolli]. The disbursement of settlement funds . . . by [Attorney

---

[2] Our record reflects that several of the medical care providers who supposedly agreed to the proposed distribution scheme never had any kind of agreement with Attorney Bolliger. Additionally, Attorney Bolliger had previously dropped one of the medical care providers from his lawsuit despite including them in the proposed agreed order.

[3] Our record reflects that some of the medical care providers included in the Order Approving Agreed Distribution never received payment.

4

Bolliger] . . . included paying substantial sums of money to [Ms. Frinzi] with no payment ever being made to [Dr. Tolli]."

Attorney Bolliger moved for summary judgment, alleging that Dr. Tolli failed to join indispensable parties. Specifically, he claimed that

> [t]he factual basis alleged, and the issues raised in [Dr. Tolli]'s current 2022 [breach of contract] action, brought pursuant to his LOP . . . were previously litigated in a prior 2019 case, separate and apart from the 2016 injury action. The 2019 case was litigated against [Dr. Tolli] and a number of other entities who had LOPs, liens or other claims on the settlement funds collected in the injury action and was brought for the express purpose of determining which medical providers (including [Dr. Tolli]) would receive what share of the PI settlement funds gathered in the 2016 case. The current plaintiff, [Dr. Tolli], was a defendant in the prior 2019 litigation and failed to appear in that prior case, which resulted in a default against [Dr. Tolli] and the Court in that case entering a Distribution Order for the same settlement funds and identical LOP that [Dr. Tolli] is now attempting to relitigate in this subsequent 2022 case.
>
> [Dr. Tolli] brings his current 2022 action against [Attorney Bolliger and Ms. Frinzi] under an LOP that stated he was entitled to settlement funds for rendering treatment to [Ms. Frinzi] in the 2016 PI action and [Dr. Tolli] seeks a portion of the settlement funds secured in the prior action but fails to include any of the other parties that were involved in the 2019 action and that had LOPs, liens and other charges related to the 2016 injury action, or the 2019 action, where the settlement funds were distributed even though [Dr. Tolli] has been repeatedly placed on notice of this failure to include these indispensable parties.

The trial court denied the motion, observing "that the non-parties [sic] referenced in Defendants' motion are not indispensable parties."[4]

---

[4] The trial court went on to explain that

5

## Analysis

"The supreme court has repeatedly cautioned that certiorari review of interlocutory orders 'is an extraordinary remedy that should be granted only in very limited circumstances.' " *Foster v. State*, 326 So. 3d 1192, 1194 (Fla. 1st DCA 2021) (quoting *Paton v. GEICO Gen. Ins. Co.*, 190 So. 3d 1047, 1052 (Fla. 2016)); *see also Dep't of Revenue ex rel. T.H.W. v. D.E.B.*, 312 So. 3d 180, 182 (Fla. 2d DCA 2021) ("Certiorari is an original proceeding designed to provide extraordinary relief." (quoting *State v. Bjorkland*, 924 So. 2d 971, 975 (Fla. 2d DCA 2006))).

In order "[t]o invoke the extraordinary relief of certiorari a party must 'demonstrate that the contested order constitutes "(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case[,] (3) that cannot be corrected on postjudgment appeal." ' " *Hett v. Barron-Lunde*, 290 So. 3d 565, 569 (Fla. 2d DCA 2020) (second alteration in original) (quoting *Bd. of Trs. of Internal Improvement Tr. Fund v. Am. Educ. Enters.,* 99 So. 3d 450, 454 (Fla. 2012)).

"The second and third elements are jurisdictional, and this court must first analyze the jurisdictional elements before it can consider whether the lower tribunal departed from the essential requirements of law. If the petitioner fails to satisfy the jurisdictional elements, this court

---

[t]he defendants' motion erroneously asks this Court to dismiss [Dr. Tolli]'s action with prejudice for failing to join indispensable parties, yet is framed as a motion for summary judgment. . . . There is no case law or other law supporting the type of motion and/or the remedy sought by the Defendants. Defendants failed to argue the correct standard for summary judgment as well.

6

dismisses the petition rather than denying it." *Plantz v. John*, 170 So. 3d 822, 824 (Fla. 2d DCA 2015) (citation omitted); *see also Foster*, 326 So. 3d at 1196 ("The rule of law is clear: district courts must first analyze the 'threshold jurisdictional' requirement of irreparable harm, and if it is not met, then the inquiry must end there.").

We jump easily to the third prong. We can dispose of this original action on the ground that Attorney Bolliger's alleged injury (the failure to join indispensable parties) can be remedied on appeal. *See Kermes v. Citizens Prop. Ins. Corp.*, 327 So. 3d 352, 353 (Fla. 3d DCA 2021) ("[W]e dismiss for lack of jurisdiction Citizens' petition seeking certiorari review of the trial court's subsequent order denying its motion to dismiss for failure to join Kermes' husband as an indispensable party."); *City of Miami v. Vill. of Key Biscayne*, 199 So. 3d 300, 302 n.2 (Fla. 3d DCA 2016) ("This Court has declined to grant certiorari relief of an order denying a motion to dismiss for failure to join an indispensable party."); *Fresh Del Monte Produce, N.V. v. Chiquita Int'l, Ltd.*, 664 So. 2d 263, 264 (Fla. 3d DCA 1995) ("[W]e decline to grant certiorari on the order denying petitioner's motion to dismiss for failure to join an indispensable party and the order denying motion for abatement or stay of proceedings."); *cf. Century-Nat'l Ins. Co. v. Frantz*, 369 So. 3d 739, 744 (Fla. 2d DCA 2023) (reviewing de novo, on direct appeal from the declaratory final judgment, insurer's claim that third-party tort claimants were indispensable parties).

After all, "[i]ndispensable parties are necessary parties so essential to a suit that no final decision can be rendered without their joinder." *Hertz Corp. v. Piccolo*, 453 So. 2d 12, 14 n.3 (Fla. 1984); *see also Fla. Dep't of Revenue v. Cummings*, 930 So. 2d 604, 607 (Fla. 2006) ("An

7

indispensable party is one whose interest in the controversy makes it impossible to completely adjudicate the matter without affecting either that party's interest or the interests of another party in the action."). Attorney Bolliger does not show how any other party is necessary to fully determine the parties' rights and obligations under the LOP. As Dr. Tolli contends, Attorney Bolliger distributed settlement funds to his client, contrary to the terms of the LOP, without first paying the doctor's bill. *See generally Cole v. Plantation Palms Homeowners Ass'n,* 371 So. 3d 413, 415 n.2 (Fla. 2d DCA 2023) ("The elements of a breach of contract claim are (1) the existence of a contract; (2) a breach of the contract; and (3) causation of damages as a result of the breach.").

Attorney Bolliger claims that the LOP "merely requires Petitioners to withhold sufficient settlement funds from the 2016 injury case to satisfy [Dr.] Tolli's *and other entities'* charges under their LOPs before paying out funds to the client." (Emphasis added.) This reading ignores the LOP's clear and unequivocal language. The LOP mentions no other entity. Recall that the LOP required Attorney Bolliger "to withhold monies from settlement or court ordered award in [his] client's case in an amount sufficient to cover any unpayed [sic] balance for services rendered by [Dr. Tolli] to [Ms. Frinzi], and to pay off those balances prior to disbursing any proceeds to [Ms. Frinzi] personally." Dr. Tolli alleges that Attorney Bolliger violated these obligations. None of the "other entities" are indispensable to resolving this contract dispute.

Attorney Bolliger also tells us that Dr. Tolli was left out in the cold through his own fault: "[Dr.] Tolli's failure to appear in that 2019 action and subsequent default therein resulted in [Dr.] Tolli failing to make a claim on the settlement funds and making it impossible for the trial

8

court to proceed with distribution without leaving [Dr.] Tolli out of the distribution." As a result, "the trial court entered an Equitable Distribution Order, wherein [Dr.] Tolli received no settlement funds." Of course, Dr. Tolli held a valid LOP and had earlier agreed to receive a discounted fee for his services. Moreover, equitable distribution was unavailable; a trial court may not rewrite the parties' contract. *See Suess v. Suess*, 289 So. 3d 525, 529-30 (Fla. 2d DCA 2019) ("[C]ontracting parties are bound by those terms, and a court is powerless to rewrite the contract to make it more reasonable or advantageous for one of the contracting parties." (quoting *Emergency Assocs. of Tampa, P.A. v. Sassano*, 664 So. 2d 1000, 1003 (Fla. 2d DCA 1995))).

Attorney Bolliger argues that (1) it is not fair for Dr. Tolli to be in a potentially better position than those who settled their bills for less than full balance; (2) allowing this action guarantees a multiplicity of suits; (3) allowing this suit will contradict the 2019 agreed order; (4) the only way for Dr. Tolli to collect in this case is to get money back from other entities that received settlement funds; and (5) Dr. Tolli is trying to relitigate the 2019 interpleader action. We are not persuaded. None of these arguments bear upon how some other entity could be an "indispensable party" under the pertinent LOP. *See Lee v. Cole*, 46 So. 3d 612, 613 (Fla. 2d DCA 2010) ("An indispensable party is one whose legal or beneficial interest in the subject matter makes it impossible to completely adjudicate the matter without affecting that party's interest."). Ms. Frinzi's other medical providers are strangers to the LOP.

## Conclusion

9

Attorney Bolliger's certiorari petition flounders on the jurisdictional irreparable harm grounds.  Therefore, we dismiss the petition.  *See Cruz v. Cooperativa De Seguros Multiples De Puerto Rico, Inc.*, 76 So. 3d 394, 397 (Fla. 2d DCA 2011) ("Absent irreparable harm, we should dismiss the petition.").

Dismissed.


SLEET, C.J., and LUCAS, J., Concur.

_____

Opinion subject to revision prior to official publication.